## WILLIAM H. CUNDIFF. V. H. L. CAMPBELL.

1. In a suit upon promissory notes, payable in *dollars*, where the defense pleaded is that by parol agreement they were payable in Confederate notes, it is not error to instruct the jury that the legal presumption is that the notes are payable in other currency than Confederate notes.
2. Where a defendant relies for defense upon the illegality of the contract in which he participated, he must sustain his defense by clear evidence of such illegality.

ERROR from Houston. Tried below before the Hon. Leroy W. Cooper.

Campbell sued Cundiff on three promissory notes—one

payable to him, and the others endorsed, but the consideration of which he well knew.

The defense relied on was, that the notes were, by agreement of parties at the time of their execution, payable in Confederate money.

Judgment was rendered for plaintiff. Motion for new trial overruled, and Cundiff brought the case by writ of error to the Supreme Court.

*Moore & Shelley*, for appellant.

*Long & Long*, for appellee.

GRAY, ASSOCIATE JUSTICE.—This was a suit by the defendant in error, Campbell, against the plaintiff in error, Cundiff, upon three promissory notes, all dated on the seventh of October, 1861, and payable on the first day of May, 1862. One of the notes was payable to Campbell himself; the two others payable to other parties, and endorsed to him; but from the facts in the case it is evident that he was present at their execution, and knew of the consideration and terms upon which they were executed by Cundiff. He stands, therefore, in the place of the payees, and subject to the same defenses as they would be. The only defenses made which the evidence at all tends to sustain, and upon which there was real issue and contest at the trial, were, first, that the notes, by agreement of the parties at the time of their execution, were to be paid in Confederate money; second, that the consideration for them was horses, and that payment was to be made in the currency of the country, by which was meant and understood by the parties at the time, Confederate money, or currency put in circulation by the so-called Confederate States to aid them in their rebellion against the government of the United States.

The evidence to sustain this defense was admitted, with-

out objection, by deposition of a witness, who testified that he was present in Denton county, where the transaction occurred, and heard the conversations of the parties before and about the time the notes were executed; and, substantially, that Campbell and the other payees of the notes sold horses to Cundiff, with the same understanding as to the terms and mode of payment. That they agreed that they would take in payment for the horses, as witness understood them, "such money as should be generally current when the notes became due, provided it would pay taxes. At the time there was but little money of any kind in general circulation—the gold and silver being mostly withdrawn, and but little Confederate money having then come into use in Texas. But in anticipation that in a short time it would be the general circulating medium, Cundiff said that it was the only kind of money that he expected to get for the horses, and that he did not wish to purchase them unless he could pay for them with it. In reply to which they said they were willing to take it, if other persons were generally doing the same, provided it would pay taxes. That owing to the scarcity of money, they wished to sell the horses for such money as they could use for that purpose, if they needed it." It was contemplated that by the time the notes became due, "there might not be gold or silver coin, but would probably be what was then usually spoken of as Confederate money, though not at that time in circulation in that part of the country." He further testified, that, according to his judgment, "the horses were worth what Cundiff agreed to give for them in 'good money' at the time he purchased them; for I think, at that time, and for some time subsequently, horses could be purchased on as advantageous terms with Confederate money as with coin, from most of persons. I know Cundiff sold me the horse he got from Campbell at the same price he gave for it, in part payment of money he

was owing me, and in payment of which he knew that I was willing to accept Confederate money."

It was further proved, by two witnesses, that Confederate money would pay taxes in 1861 and in 1862; but that very little of it was in circulation until July, 1862, in Houston county, though one witness testified that a good deal of it was in circulation in Hill county in the fall of 1861.

Upon this evidence the judge presiding instructed the jury, in accordance with the decisions of the Supreme Court of this State for some years past, that if from the evidence they were satisfied that it was agreed by the parties that "the notes were to be paid off and discharged in Confederate treasury notes," the contract was illegal, and they would find for defendant; and also, that if it was understood and agreed "that at the maturity of the notes they should be discharged in the currency of the country then in circulation, and that at such time Confederate money or treasury notes was the currency of the country, and that all taxes could be paid in such currency, then you will find for defendant;" but that if other currency "was intended—and that is the legal presumption—and you should so believe, find for plaintiff," etc.

The jury found for the plaintiff for the amount of the notes and interest. Motion for new trial was overruled, and judgment for plaintiff rendered.

The only grounds for new trial or errors assigned worthy of consideration are, that the verdict was contrary to the law and evidence, and that the court erred in refusing a new trial.

We do not deem it necessary for the disposition of this case to discuss the propositions asserted as law in the charge of the court, involving as it would the merits of various decisions of our predecessors. It is sufficient to say, that the plaintiff in error has no reason to complain

of them; for if they be not law, he had no defense. The question is simply upon the facts, whether the weight of evidence was so manifestly against the verdict, and productive of such injustice, as to require this court to set it aside. It must be a clear case of wrong to justify an appellate tribunal in reversing the action of a jury and judge who heard the evidence. But the evidence before us certainly does not show that the parties agreed that the notes should specifically be paid in Confederate money, nor that Confederate currency was exclusively contemplated by them as pleaded.

The evidence does not fully sustain the plea, for it appears that there were contingencies or conditions on the happening of which it was understood that the parties were willing at all to receive Confederate currency, which had not occurred or been fulfilled at the maturity of the notes. It does not appear that Confederate currency had come into general circulation, or that it was generally received by other persons, either in Denton county, where the contract was made, or in Houston county, where the payer of the notes resided. On the contrary, the evidence tends to show that it did not come in general use there until July, 1862. This was long after the time when the parties had a right to expect payment for their horses, sold at a good money valuation, for the avowed purpose of raising money to meet their taxes. A party who relies on such a defense should make clear proof of every particular necessary to it; for the written terms of his contract and the presumptions of law are all against the illegal intent of the contracting parties. When he relies on this defense of illegality of contract, in which he participated, and which was agreed to at his instance, most certainly he must bring his case fully up to the terms of the law, by clear evidence of the illegality under which he seeks protection. This he has not done, and the manifest equity of the case was attained by the

verdict of the jury and judgment of the court in refusing a new trial. The judgment is affirmed.

AFFIRMED.

Associate Justice Moore, having been of counsel, did not sit in this case.