Dwight FRANKLIN and Sandra
Franklin, Appellants,

v.

J.O. JACKSON, Appellee.

No. 08–92–00054–CV.

Court of Appeals of Texas,
El Paso.

Dec. 23, 1992.

Rehearing Overruled Jan. 20, 1993.

Harold Phelan, Phelan and Phelan, Levelland, for appellants.

William E. Fulbright, Lamesa, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

KOEHLER, Justice.

In a suit for breach of contract, the defendant moved for summary judgment on the ground that the contract was illegal and therefore unenforceable. Plaintiffs appeal from the order granting the summary judgment. We reverse and remand.

## FACTUAL BACKGROUND

On July 15, 1982, J.S. & D., Inc. and J.O. Jackson (Jackson), Appellee, entered into an agreement in writing whereby J.S. & D. sold to Jackson its United States Department of Agriculture (USDA) peanut allotments for a period of four years. The agreement provided that at the end of the term, the buyer would sell the allotment back to seller for the sum of one dollar; i.e. the allotments were to be sold back to J.S. & D. at the end of the 1985 crop year. In accordance with the agreement, J.S. & D. transferred an allotment of 153,057 pounds of peanuts to Jackson and Jackson made the required payments to J.S. & D. for the years 1982 through 1985. In September 1986, Jackson transferred back to J.S. & D. 152,212 pounds of the peanut quota, effective for the crop year 1986, retaining for himself an allotment of 84,224 pounds which resulted from a USDA increase in the allotment based upon the 1985 quota. It is claimed that Jackson, by failing to transfer back the basic allotment until September 1986, also received and retained an allotment of an additional 19,787 pounds resulting from a further increase in the allotment based upon the 1986 quota, a total of 104,011 pounds of additional allotments.

## THE SUIT

Dwight Franklin and wife, Sandra Franklin (Franklin), Appellants, are the succes-

sors in interest to J.S. & D., Inc.[1] which was dissolved in January 1987. Following Jackson's refusal to transfer the additional allotments to them, Franklin filed this suit for damages resulting from breach of the agreement. Following his answer which alleged a number of defenses, Jackson filed his motion for summary judgment, alleging as grounds that the purported sale under the agreement was in fact a lease of the peanut allotments for a term of four years and that under the regulations of the Agricultural Stabilization and Conservation Service (ASCS) of USDA, a lease of the allotments for a term longer than one year was illegal, void and therefore unenforceable. Attached to the motion is Jackson's affidavit, deposition testimony of Franklin and copies of the relevant federal regulations. Franklin, in his response, contended that Jackson's deposition admitted that the contract was not illegal and Jackson's own motion showed that a material fact issue exists as to whether the agreement was a lease or a sale. The trial court granted the motion and rendered a take-nothing judgment in favor of Jackson. In a single point of error, Franklin asserts that the trial court erred by granting the summary judgment.

### STANDARD OF REVIEW

 In reviewing a summary judgment appeal, this Court must determine whether the successful movant in the trial court carried his burden of showing that there is no genuine issue of a material fact issue and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). When deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and his motion is based on an affirmative

defense, he must conclusively prove all the essential elements of that defense as a matter of law. *Munoz v. Gulf Oil Company*, 693 S.W.2d 372, 373 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

### SALE OR LEASE?

 Jackson's illegality defense hinges primarily on whether the agreement between the parties is, as it purports to be, a sales contract or a lease. A "sale" is defined as "[a] contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter *the title and the possession* of property.... A contract whereby property is transferred from one person to another for a consideration of value, *implying the passing of the general and absolute title, as distinguished from a special interest falling short of complete ownership*." [Emphasis added]. *Black's Law Dictionary*, 1200 (5th ed. 1979). On the other hand, the word "lease" "means a contract by which one owning such property grants to another the right to possess, use and enjoy it *for a specified period of time in exchange for periodic payment of a stipulated price*, referred to as rent." [Emphasis added]. *Id.* at 800. The Texas Uniform Commercial Code defines "sale" as consisting of "the passing of title from the seller to the buyer for a price." Tex.Bus. & Com.Code Ann. § 2.106 (Vernon 1968). It is elementary law that title of the transferred item must pass to and be vested in the transferee in order for the transaction to be a sale. *Charles M. Stieff, Inc. v. City of San Antonio*, 130 Tex. 594, 111 S.W.2d 1086, 1090 (1938); *J.C. Engelman, Inc. v. Sanders Nursery Co.*, 140 S.W.2d 500, 507 (Tex.Civ. App.—El Paso 1940, writ ref'd). A lease of personal property is a form of a bailment for hire. Where a contract expressly or impliedly requires that the property be re-

---

1. Dwight Franklin, as president, signed the agreement in question on behalf of J.S. & D., Inc.

turned to the owner, it is a bailment and not a contract of sale. *Mitchell v. Eagle Creek Oil Co.*, 275 S.W. 211 (Tex.Civ. App.—El Paso 1925, no writ).

■ It is of little moment that the agreement [2] utilizes the terms of "seller," "buyer," "sold" and "sale" throughout in reference to the parties and the transaction, when the intention of the parties as shown by the clear effect of the agreement was to create a lease and not a sale of the allotment. There is no question that the property right (the peanut allotment) which was transferred was merely the use by Jackson of the allotment for a term of four years, with Jackson agreeing to pay to J.S. & D. for the use of the allotment five cents per pound based on the quota pounds of peanuts for the year 1982 and for the years 1983, 1984 and 1985, one-fourth of the government support price per pound on the quota pounds of peanuts established for each of those years. At the end of the four year period, he was required to transfer the allotment back to J.S. & D. for a nominal one dollar consideration. While the use and possession of the allotment was transferred to Jackson, title and ownership of the allotment clearly was not. Jackson had none of the rights normally associated with ownership, such as the right to sell the allotment to someone else. Moreover, the annual payments to be made as "consideration for the sale" were the equivalent of rental payments, not purchase price payments such as might be associated with a conditional sales contract. We conclude that as a matter of law, the agreement between the parties created a lease of the allotment and not a sale.

## WAS THE LEASE ILLEGAL AND THUS UNENFORCEABLE?

■ Parties have the right to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal. *Scoville v. Springpark Homeowner's Association, Inc.*, 784 S.W.2d 498, 502 (Tex.App.—Dallas 1990, writ denied). An illegal contract is one in which the parties undertake to do an act forbidden by the law of place where it is to be done, and as such it is an invalid agreement which imposes no legal obligation. *Miller v. Long–Bell Lumber Co.*, 148 Tex. 160, 222 S.W.2d 244, 246 (1949). As stated by the Court in *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947):

'A contract to do a thing which cannot be performed without a violation of the law is void.' *Texas Employers' Ins. Ass'n v. Tabor*, Tex.Com.App., 283 S.W. 779, 780. See also 12 Am.Jur. pp. 647, 648, Sec. 153. But where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court. [Citations omitted]. When two

---

**2.** The following is the full text of the agreement:
THE STATE OF TEXAS,
COUNTY OF GAINES.
This Agreement is made and entered into this the 15th day of July, 1982, between J.S. & D., Inc. and J.O. Jackson as follows, to-wit:
1. This Agreement is made by J.S. & D., Inc., hereinafter called "Seller" and J.O. Jackson, hereinafter called "Buyer" with full knowledge and understanding on the part of all parties that the peanut allotment as established by the United States Department of Agriculture for Farm number B–148 as shown by the records of said department by and through the Agricultural Stabilization and Conservation Service, has been sold to J.O. Jackson, Buyer, by J.S. & D., Inc., Seller;
2. It is agreed between the parties that the term of the sale shall be for four (4) years, being the crop years 1982 thru 1985;
3. It is agreed that the consideration for the sale for the year 1982 shall be five (5) cents per pound based on the quota pounds of peanuts established for the above numbered farm for said year and that the consideration for the years 1983, 1984 and 1985 shall be one-fourth (¼) of the government support price per pound on the quota pounds of peanuts established for each of the years, with such establishment to be that determined by the Agricultural Stabilization Conservation Service;
4. Said Buyer agrees to make said payments within fifteen (15) days after the quota pounds of peanuts are established for said farm;
5. Buyer agrees that at the end of the said term to sell the peanut allotment back to the Seller for $1.00.
Executed this the 15th day of July, 1982.
SELLER:
J.S. & D., Inc.
/s/ Dwight Franklin Pres.
BUYER:
/s/ J.O. Jackson

constructions of a contract are possible, preference will be given to that which does not result in violation of law. [Citations omitted]. A contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner.

Generally, a contract to lease property for a term of four years is not in and of itself illegal. Jackson contends that the contract in question transferring the peanut allotment to him for four years is illegal because it contravened the rules and regulations of the ASCS. He asserts that the multiyear lease is prohibited by the applicable federal regulations and "is therefore illegal, void and unenforceable as a matter of law." Where the illegality does not appear on the face of the contract, it will not be held illegal and thus void unless the facts showing its illegality are before the court. *Lewis*, 199 S.W.2d at 149. The presumption being in favor of legality, the burden of proof is on the party asserting the illegality. *Cundiff v. Campbell*, 40 Tex. 142, 147 (1874); *MJR Corporation v. B & B Vending Company*, 760 S.W.2d 4, 22 (Tex.App.—Dallas 1988, writ denied).

▇▇▇ With reference to the regulations controlling the transfer of peanut allotments during the years in question, the Code of Federal Regulations provides in identical sections as follows:

> (b) *All other transfers.* Transfers by lease and by operator may only be approved for one year. Multiyear leases and permanent operator transfers shall not be permitted.

7 C.F.R. § 729.145(b) (1991) (applicable to the 1982 crop of peanuts), and 7 C.F.R. § 729.245(b) (1991) (applicable to the 1983 through 1985 crops of peanuts). Sections 729.151 and 729.250 require approval by the county ASCS committee only if it determines that the transfer complies with the applicable regulations. Sections 729.171 et seq. and 729.271 et seq. provide for marketing penalties, none of which apply to a transfer of an allotment by lease for more than one year.

Based on the wording of these regulations, multiyear leases are not to be approved or permitted by the county committee but it does not follow that such leases are illegal per se. When presented with such a lease, the committee could simply indicate that it would only be approved for one year at a time. In this case, it is unclear from the record whether the committee misinterpreted the agreement to be what it purported to be, an outright sale, or overlooked the provisions requiring Jackson to "sell" the allotment back to the "seller." In any event, the committee approved the agreement and the transfer. The summary judgment evidence indicates that the contract was drawn up by an attorney in accordance with wording suggested by Jackson in order to avoid a yearly lease. Moreover, Jackson himself did not consider the contract to be illegal as late as December 20, 1990 when his deposition was taken in connection with this case. Jackson has cited no authority for the proposition that a four year lease of an allotment is illegal, particularly where the only onus is nonapproval by county ASCS committee. We conclude that the agreement as between Franklin and Jackson is not illegal and is therefore enforceable.

## AMBIGUOUS CONTRACT

▇▇▇ The agreement is silent with respect to the disposition of the increase in the allotment of some 84,224 pounds by 1986 over the allotment of 152,212 pounds which J.S. & D. transferred to Jackson in July 1982. The agreement merely provides that at the end of the four year term, Jackson is to transfer the peanut allotment back to the "seller" for a consideration of one dollar. Whether a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). When a contract contains an ambiguity, the interpretation of the contract becomes a fact issue making the granting of a summary judgment improper. *Id.* at

394. The increase in the allotment, unprovided for by the terms of the agreement, has created a latent ambiguity which must be determined by the trier of fact.

Franklin's point of error is sustained. The summary judgment is reversed and the cause is remanded to the trial court for trial on the merits.