In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-00423-CV
____________

REED MARTIN, Appellant

V.

DONALD M. BISHOP, Appellee




On Appeal from the 295th District Court 
Harris County, Texas
Trial Court Cause No. 9952230 




O P I N I O N
          Appellant, Reed Martin, is the former law partner of appellee, Donald M.
Bishop, and was formerly licensed to practice in Texas. Martin appeals pro se to
challenge a judgment rendered in favor of Bishop, who sued Martin and recovered
actual damages and attorney’s fees based on claims that Martin wrongfully withdrew
from their partnership. Martin raises several broad contentions, which we have
construed indulgently and address as challenging (1) the validity of the partnership
agreement, (2) the legal sufficiency of the evidence to support Martin’s financial
responsibilities to Bishop under the partnership agreement, and (3) the trial court’s
implied finding that Bishop complied with his duty, under the partnership agreement,
to mitigate damages.


 We affirm. 
Background
          Bishop and Martin executed a written, limited liability partnership agreement
on June 26, 1996, having previously agreed to open a practice dedicated to education-disability law and having moved into an office suite for that purpose in mid-March
1996. Bishop had retired from his career position as a corporate tax attorney and had
used his severance package funds to open the practice with Martin. Martin was a
nationally recognized speaker and expert in education-disability law. 
          The partnership agreement recites that the purpose of the partnership is “to
facilitate the practice of law by each of the partners” and states an effective date of
March 1, 1996 for the formation of Martin and Bishop, L.L.P. The agreement did not
provide for income to either partner and acknowledges Bishop’s contribution of
$25,000 worth of office equipment, furniture, and fixtures, as well as $25,000 in cash. 
The address of the partnership was the office suite Martin and Bishop had occupied
since March 1996, which had been leased for a three-year term. 
          The general business plan for the partnership was that Bishop would fund the
firm, by using his severance funds to provide operating expenses, while Martin would
share his expertise to educate Bishop in education-disability law while generating
clients for disability cases the firm could litigate. Martin planned to generate clients
by continuing the national seminars that had been his primary income before joining
Bishop and by presenting local seminars in the large conference room in the firm’s
office suite.


 
          During the first months of the partnership, Martin spent considerable time and
effort attempting to generate potential clients, but by September 1996, the firm had
no actual cases for litigation and income potential. Martin told Bishop then that he
would no longer work on taking on new potential cases on behalf of parents of
disabled children and would concentrate instead on his lecture circuit and accept
every possible speaking engagement. During the 1996 Christmas holidays, Martin
removed all of his belongings from the partnership’s office suite while Bishop was
out of town. When Bishop returned to the office, he found a letter from Martin
stating that he could not “continue to go into a building or an office that violates the
Americans with Disabilities Act.” Martin’s letter listed 11 conditions of the building
and office suite that Martin considered violations of that statute.
          During the course of the partnership, Bishop advanced over $5,000 to Martin
for personal expenses. In addition, Martin withdrew over $7,000 from partnership
funds for personal expenses without Bishop’s approval. Bishop ultimately sued to
recover the funds he had advanced to Martin; the funds Martin had withdrawn; other
contractual damages, including remaining rental obligations; and attorney’s fees. 
Martin answered by claiming that the alleged inaccessibility of the firm’s offices to
disabled persons rendered the partnership agreement void from its inception, kept
Martin from practicing law, and jeopardized Martin’s reputation. 
          Trial was to the court, which rendered judgment in favor of Bishop for $51,134
in actual damages, $8,773.20 in prejudgment interest, and $10,000 in attorney’s fees. 
The clerk’s record contains a document entitled “Findings of Fact and Conclusions
of Law,” and the reporter’s record of the bench trial reflects these were drafted and
proposed by Bishop’s counsel. The trial court did not sign the proposed findings and
conclusions, however, and Martin did not request findings of fact and conclusions of
law. See Tex. R. Civ. P. 296 (authorizing any party to request findings of fact and
conclusions of law after non-jury trial). 
 

Standard of Review
          Proposed findings of fact and conclusions of law that lack the trial court’s
signature present nothing for review, and the record stands as if the trial court filed
no findings and conclusions. See Summers v. Welltech, Inc., 935 S.W.2d 228, 233-34
(Tex. App.—Houston [1st Dist.] 1996, no writ); Friedman v. New Westbury Village
Assoc., 787 S.W.2d 154, 157 (Tex. App.—Houston [1st Dist.] 1990, no writ). When
the trial court files no findings of fact and conclusions of law after a bench trial, the
court’s judgment implies all findings necessary to support it, provided the necessary
findings are raised by the pleadings and supported by the evidence, and the decision
can be sustained on any reasonable theory consistent with the evidence and the
governing law. See Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989); Fair
Deal Auto Sales v. Brantley, 24 S.W.3d 543, 546 (Tex. App.—Houston [1st Dist.]
2000, no pet.). We review, de novo, the trial court’s implied legal conclusions
supporting the judgment. See Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P., 981
S.W.2d 916, 919 (Tex. App.—Houston [1st Dist.] 1998, no pet.). When, as here, the
record on appeal contains a full reporter’s record of the trial, appellant may challenge
the trial court’s implied findings for legal and factual sufficiency, under the same
standards that govern challenges to a jury’s findings, but must show that the judgment
of the court below cannot be sustained by any theory raised by the evidence. See
Roberson, 768 S.W.2d at 281; Fair Deal Auto Sales, 24 S.W.3d at 546. In an appeal
from a bench trial, we may not invade the fact-finding role of the trial court, who
alone determines the credibility of the witnesses, the weight to give their testimony,
and whether to accept or reject all or any part of that testimony. Fair Deal Auto
Sales, 24 S.W.3d at 546.
Validity of the Partnership
          Martin presents several arguments that challenge the validity of his partnership
agreement with Bishop on the grounds that the alleged inaccessibility of the firm’s
offices to disabled clients violated the Americans with Disabilities Act and thus
rendered the partnership agreement void from its inception. By rendering judgment
in Bishop’s favor, the trial court implicitly rejected Martin’s claimed defense and
concluded that the claim failed as a matter of law. On reviewing this implied
conclusion de novo, see Houston Bellaire, Ltd., 981 S.W.2d at 919, we conclude the
trial court complied with settled Texas law in rejecting Martin’s claim. 
          The validity of a contract is generally a question of law. Farah v. Mafrige &
Kormanik, P.C., 927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no
writ). An illegal contract is one in which the parties undertake what the law forbids. 
See Lewis v. Davis, 199 S.W.2d 146, 148-49 (Tex. 1947); Franklin v. Jackson, 847
S.W.2d 306, 309 (Tex. App.—El Paso 1992, writ denied). Because the contract
violates the law, it imposes no legal obligation on the parties. Miller v. Long-Bell
Lumber Co., 222 S.W.2d 244, 246 (Tex. 1949); Franklin, 847 S.W.2d at 309. The
law presumes, however, that contracts are legal, and the burden to prove illegality is
on the party asserting it, in this case, Martin. See Franklin, 847 S.W.2d at 310. 
Although a contract that cannot be performed without violating the law is void, unless
the face of the contract shows it is illegal, the party asserting illegality must present
facts demonstrating the illegality before a court may declare the contract void. See
Lewis, 199 S.W.2d at 149; Franklin, 847 S.W.2d at 310. 
          The stated purpose of the partnership agreement between Martin and Bishop 
was “to facilitate the practice of law by each of the partners.” This purpose does not 
violate the law. As the trial court countered repeatedly, in response to Martin’s final
argument contending the agreement was void since its inception, “The practice of law
is not an illegal purpose” and “The contract to be partners is not void.” Because the
face of the contract thus reflects a valid, legal purpose, the burden shifted to Martin
to substantiate his claim of illegality. See Lewis, 199 S.W.2d at 149; Franklin, 847
S.W.2d at 310.
          Although challenged by the trial court to demonstrate an illegality that rendered
the partnership void, Martin produced neither evidence nor legal authority to support
his defense. Martin argued vehemently before the trial court that a handicapped
visitor to the leased premises “would” find conditions that violated governmentally
imposed accessibility regulations and repeats those same arguments here. Martin
never went beyond these speculations, however, and offered no evidence of actual
violations or complaints by visitors that were premised on violations. Although
Martin and Bishop had occupied the leased premises for over a month when they
signed the partnership agreement, nothing in the agreement either acknowledges that
the firm’s premises must accommodate disabled persons or requires that the firm’s
premises comply with the Americans with Disabilities Act. As the trial court noted,
“The place of practicing law is not a material part of the contract.” Likewise, Martin
failed to provide the trial court with any legal authority to support his illegality
defense and has not provided us with any authority to substantiate this claim. 
          The trial court’s implied rejection of Martin’s defense, that the alleged
inaccessibility of the leased premises invalidated the partnership agreement from its
inception, is raised by the pleadings, supported by the record, and consistent with the
record and the governing law. Accordingly, we overrule Martin’s arguments
contending that the partnership agreement was void. 
Martin’s Financial Responsibility to Bishop
          Martin presents several issues that we have construed as challenging whether
the partnership agreement obligated him to pay the damages awarded by the trial
court. By awarding Bishop damages, the trial court impliedly construed the
partnership agreement as binding Martin with financial responsibility to pay
partnership expenses. We construe this legal conclusion de novo. See Houston
Bellaire, Ltd., 981 S.W.2d at 919. 
          Although Bishop funded the rental of the firm’s office suite in the first year of
the partnership, it is undisputed that the lease was for a full, three-year term. In
disputing his financial responsibility to pay one-half of the rent, Martin reasserts his
contention that the suite was “inaccessible and illegal” and that this negated any duty
to contribute to payment of rentals due under the lease. This contention merely
reasserts Martin’s challenge to the validity of the partnership agreement, a contention
we rejected above and reject once again here. 
          Paragraph (a) of section VII of the partnership agreement, which addressed
dissolution of the partnership, also outlined the financial responsibility of a partner
on voluntary withdrawal from the partnership and required contribution to the firm’s
continuing overhead expenses. The trial court’s implied conclusion that the
partnership agreement obligated Martin to contribute to the rental expenses after the
first year of the partnership is raised by the pleadings, supported by the record, and
consistent with the governing law. Accordingly, we overrule Martin’s contention that
he had no responsibility to contribute to payment of rent over the term of the lease.
          Martin also disputes his responsibility to reimburse Bishop for funds he
advanced to Martin for non-partnership expenses. It is undisputed that Bishop
contributed $50,000 in cash and equipment to the partnership and funded the
partnership during its first year and that the partnership agreement did not provide for
any income to either partner and contemplated shared income only if the firm
actualized a profit. It is also undisputed that Martin kept the funds he earned from
speaking engagements to apply them to the $60,000 advance he owed his publisher. 
In 1996, Bishop issued several checks bearing the label “advance” to Martin. These
totaled over $5,000. In addition, Martin issued several checks to himself in 1996. 
These totaled over $7,000. Martin argued in the trial court and continues to argue on
appeal that these funds were “gifts.” Bishop, however, considered these advances
loans, and Martin acknowledged, in correspondence to Bishop, that he had borrowed
funds from Bishop for living expenses. A loan implies a debtor-creditor relationship. 
Johnson v. Cherry, 726 S.W.2d 4, 6 (Tex. 1987). Accordingly, the trial court could
have properly concluded that both the funds Bishop advanced to Martin and the funds
Martin withdrew from the partnership were not gifts but loans and that Martin had a
duty to repay these funds to Bishop. This implied conclusion is raised by the
pleadings, supported by the record, and is consistent with the governing law. 
Accordingly, we overrule Martin’s argument that he had no obligation to repay
Bishop.
 

Bishop’s Compliance with His Duty to Mitigate Damages
          Martin also presents arguments that we have construed as challenging the
sufficiency of the evidence to support the trial court’s implied finding that Bishop
complied with his duty to mitigate damages under the partnership agreement. Bishop
testified that he negotiated unsuccessfully with at least three attorneys over a six-to-eight-month period in an effort to occupy Martin’s vacated offices and later
negotiated with two additional attorneys, but to no avail. Bishop’s testimony is
legally sufficient to support the trial court’s implied finding that Bishop complied
with his duty to mitigate damages under the partnership agreement. We further
conclude that the evidence does not so greatly preponderate against that finding as
to render it clearly wrong and manifestly unjust and that Bishop’s testimony is,
therefore, factually sufficient to support the trial court’s implied finding. We overrule
Martin’s challenge to the sufficiency of the evidence to support the trial court’s
implied finding that Bishop complied with his duty to mitigate damages.
Waived Complaints
          Martin contends that Bishop’s failures to obtain liability insurance and
“lawful” office space, and the possibility that the firm “might” be found to be in
violation of the Texas Deceptive Trade Practices-Consumer Protection Act, all
constituted breaches of the partnership agreement that excused Martin from
complying with the agreement. Although he never asserted a counterclaim, Martin
further contends he should be compensated because he taught Bishop about disability
law. Martin has waived these points by not providing either citations to the record
or legal authority to support his contentions. See Tex. R. App. P. 38.1(h). 
          Martin’s brief contains additional arguments that fall short of the requirement
that issues or points presented for review must be concisely stated. See Tex. R. App.
P. 38.1(c). We overrule all additional arguments in Martin’s brief on that ground.
Conclusion
We affirm the judgment of the trial court.



     Elsa Alcala
     Justice

Panel consists of Justices Taft, Alcala, and Price.




Do not publish. Tex. R. App. P. 47.4.