# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 12, 2024

Lyle W. Cayce
Clerk

———————

No. 21-10558

———————

American Precision Ammunition, L.L.C, *also known as* Precision Ammunition; Matthew Campbell; Lauren Campbell,

*Plaintiffs—Appellants*,

*versus*

City of Mineral Wells; The Mineral Wells Industrial Foundation, Incorporated; The Mineral Wells/Palo Pinto Area Growth Council; Stephen L. Butcher; S.L.B., Incorporated,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
No. 4:19-CV-973

———————————————————————

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

This case serves as a strong reminder of the consequences of entering into a contract that obligates a party to perform an action forbidden by law. The City of Wells in Texas ("City") and American Precision Ammunition, L.L.C. ("APA") entered into a Tax Abatement Agreement ("Agreement") in which the City promised to "gift" APA $150,000 and provide APA ten

years of tax abatements. The City ultimately terminated the Agreement, claiming that the $150,000 gift was illegal under the Texas Constitution. APA sued the City and, relevant to this appeal, brought claims for breach of contract, a violation of the Texas Open Meetings Act ("TOMA"), denial of federal due process, and denial of due course of law under the Texas Constitution. The district court dismissed the claims under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure and denied APA's motion for reconsideration and motion to alter or amend final judgment. Because the illegality of the contract is apparent from the face of the complaint, we AFFIRM.

## I. Factual and Procedural History

APA is in the business of designing and fabricating munitions, munitions components, and munitions equipment. On July 5, 2016, APA entered into the Agreement with the City. The Agreement provided APA with financial incentives as part of the City's efforts to entice APA to relocate to the City. For example, under the Agreement, APA agreed to spend at least $250,000 on improvements to its new site in the City, and the City agreed to "gift" APA $150,000 towards this total. The Agreement also contained provisions detailing the number of employees that APA would employ, tax abatements that APA would receive, and inspections that the City would perform.

APA alleges its relationship with the City began to sour in 2017, about a year after the parties entered into the Agreement. On July 17, 2018, the City, through its council, voted to revoke the Agreement without paying the $150,000 "gift" because of the City's claim that the gift was illegal under Texas's Constitution. This lawsuit followed.

In its original complaint, APA brought claims against the City for breach of contract, a violation of the TOMA, violation of federal due process

No. 21-10558

protections, and violation of the due course of law provision of the Texas Constitution. The City filed its first motion to dismiss, which the district court granted, thereby dismissing the breach of contract, 42 U.S.C. § 1983 federal due process, and Texas due course of law claims with prejudice. The district court also dismissed APA's TOMA claim, but without prejudice because APA was granted leave to amend that claim. APA then filed its first amended complaint, which continued to plead all four claims even though the district court only granted APA leave to amend the TOMA claim.

Over a month later, APA filed a motion for reconsideration of the district court's decision to dismiss the breach of contract claim. In the alternative, APA moved for leave of court to file a second amended complaint. The district court denied APA's motion for reconsideration and motion for leave to file a second amended complaint. The district court also struck the portions of the first amended complaint that related to the three claims—breach of contract, federal due process, and state law due course of law claims—already dismissed with prejudice. The only claim remaining in APA's first amended complaint relevant to the instant appeal was APA's TOMA claim. The City filed a second motion to dismiss the TOMA claim—this time as moot. The district court granted the second motion pursuant to Rule 12(b)(1) and dismissed APA's TOMA claim without prejudice as moot. The district court also entered final judgment in favor of the City and against APA. APA filed a motion to alter or amend the final judgment, "request[ing] the [district court to] alter and amend its judgment dismissing" APA's breach of contract claim against the City. The district court denied the motion. The instant appeal followed.

## II. Standards of Review

We review de novo whether a complaint pleads enough facts to state a claim to relief that is plausible on its face under Rule 12(b)(6). *Whitley v.*

No. 21-10558

*Hanna*, 726 F.3d 631, 637 (5th Cir. 2013) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "[t]he failure-to-state-a-claim inquiry typically focuses on whether the plaintiff plausibly alleges the element of a claim," a "Rule 12(b)(6) dismissal may also 'be appropriately based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Id.* (quoting *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020)). [1] "[T]he pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Id.* (quoting *Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991)).

We also review de novo the district court's dismissal of a moot claim for lack of subject matter jurisdiction. *See Payne v. Progressive Fin. Servs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014).

Finally, we review the denial of both a motion for reconsideration and a motion to alter or amend a final judgment for abuse of discretion. *See Ryan v. Phillips 66*, 838 F. App'x 832, 834 (5th Cir. 2020) (citation omitted);

---

[1] In its briefing, APA asks us "to resolve [what it characterizes to be a] split among the district courts in this Circuit regarding which pleading standard applies to affirmative defenses." According to APA, some district courts apply the plausibility standard to answers, while some do not. APA invites us "to adopt the plausibility standard to affirmative defenses" asserted in a pleading (e.g., an answer). We find no occasion to reach this issue because, though an affirmative defense forms the basis of the City's motion to dismiss, a motion to dismiss (i.e., what is on appeal), as opposed to an answer, is not a pleading. FED. R. CIV. P. 7(a).

*McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (citation omitted). Under this standard, the court's decision need only be reasonable.

## III. Discussion

The district court dismissed APA's breach of contract, TOMA, federal due process, and state due course of law claims. We review each claim in turn.

### A.

APA first argues the district court erred when it found the Agreement illegal and, therefore, unenforceable under Texas law. As explained below, the district court did not err because the illegality of the Agreement is clear from the face of the complaint and the contract attached to it.[2]

"Under Texas law,[3] a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur." *In re OCA, Inc.*, 552 F.3d 413, 422 (5th Cir. 2008) (citing *Miller v. Long-Bell Lumber Co.*, 222 S.W.2d 244, 246 (Tex. 1949)). "Contracts are presumptively legal, so the party challenging the contract carries the burden of proving illegality." *Id.* (citing *Franklin v. Jackson*, 847 S.W.2d 306, 310 (Tex. App.—El Paso 1992, writ denied)). Article III, section 52(a) of the Texas Constitution "prohibits the Legislature

---

[2] "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (first citing FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); and then citing *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[T]he court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim.")).

[3] The district court exercised 28 U.S.C. § 1367(a) supplemental jurisdiction over APA's state law claims; therefore, as in a diversity case, we apply Texas substantive law to these claims.

from authorizing any [city] . . . to grant public money[,]" which the Supreme Court of Texas has stated "means that the Legislature cannot require *gratuitous* payments to individuals, associations, or corporations" and cannot "authorize a county, city, town or political subdivision of the State to lend credit or grant public funds." *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 380, 383-84 (Tex. 2002) (citations omitted) (emphasis in original); *see also Edgewood Indep. Sch. Dist. V. Meno*, 917 S.W.2d 717, 740 (Tex. 1995), as modified (Feb. 16, 1995). However, "[a] [city]'s paying public money is not 'gratuitous' if the [city] receives return consideration." *Tex. Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 383 (citing *Key v. Comm'rs Ct. of Marion Cnty.*, 727 S.W.2d 667, 668 (Tex. App.—Texarkana 1987, no writ)).

Section 52(a) has rarely been addressed in the contract context, so we look to the statutory context for guidance. Doing so, the Supreme Court of Texas has stated "section 52(a) does not prohibit payments to individuals, corporations, or associations so long as the statute requiring such payments: (1) serves a legitimate public purpose; and (2) affords a clear public benefit in return." *Id.* (citations omitted). With respect to the first prong, to determine whether the "statute requiring such payments . . . serves a legitimate public purpose, . . . the Legislature must" do three things: "(1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) *ensure that the [city] receives a return benefit*." *Id.* at 383-84 (citations omitted) (emphasis added). That latter requirement of "a return benefit," or better put, "consideration," is fatal to APA's lawsuit.

In its motion to dismiss, the City argued that it could not provide APA with the $150,000 because, under Section 52(a), it "is prohibited by law from giving a gift of public monies to corporations and individuals." APA

responded that although the Agreement "described the payment of $150,000 as a 'Gift[,]' in reality the City agreed to provide APA with this payment in consideration of APA's agreement to relocate to [the City], along with other valuable consideration as further identified in Exhibit C attached to the Complaint" and that "a 'transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of' [the Texas Constitution]." The district court found that APA failed to "point to any facts alleged in the Complaint . . . to support its presumed conclusion that the City's gift of $150,000 was for a public purpose 'with a clear public benefit.'" The district court concluded that because the gift did not fall within any exception, "the contract is illegal and unenforceable."

Under our de novo review, we find that the City's contractual obligation to "gift" APA $150,000 constitutes a gratuitous payment of public money, meaning APA's breach of contract claim cannot succeed because the contract is illegal under Texas's Constitution. Both APA's complaint, and the Agreement attached to APA's complaint, are unambiguous that the City's $150,000 payment was intended to be a gratuitous transfer to APA for two reasons. *See Chisholm Trail SUD Stakeholders Grp. v. Chisholm Trail Special Util. Dist.*, No. 03-16-00214-CV, 2017 WL 2062258, at *6-7 (Tex. App.—Austin May 11, 2017, pet. denied) (examining whether "the express terms of the Agreements conclusively establish the District's return consideration and the Agreements' public purposes" and concluding that they were conclusively established by the express terms); *see also Morales v. Hidalgo Cnty. Irrigation Dist. No. 6*, No. 13-14-00205-CV, 2015 WL 5655802, at *3 (Tex. App.—Corpus Christi-Edinburg Sept. 24, 2015, pet. denied) (examining whether contract unambiguously provided consideration).

First, consider the plain meaning of the terms of the Agreement. The Agreement states that APA "shall make a Capital Investment of no less than

$200,000 in the aggregate for Required Improvements *including $150,000.00 Gift* from City to [APA] for infrastructure for Land to accommodate its manufacturing business" and slates completion of the improvements in part as "15 months from the date city *gifts* funds to [APA]." The complaint also repeatedly refers to the transfer as a "gift." Black's Law Dictionary defines "gift" as "[t]he voluntary transfer of property to another *without compensation*." *Gift*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). "[W]e must presume parties intend what the words of their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019) (internal quotations and citations omitted); *see also Birdwell v. Birdwell*, 819 S.W.2d 223, 228 (Tex. App.—Fort Worth 1991, writ denied) ("[T]he alimony provision . . . *does NOT state that [the alimony provision] is wholly gratuitous*.") (emphasis added). The Agreement's later reference to the $150,000 as a "grant" does not negate the plain meaning of the word "gift." Looking to Black's Law Dictionary again, "grant" is "[a]n agreement that creates a right or interest in favor of a person or that effects a transfer of a right or interest from one person to another" or "[t]he formal transfer of real property." *Grant*, BLACK'S LAW DICTIONARY (11th ed. 2019). This definition of "grant" aligns with the gratuitous nature of a "gift."

Second, the Agreement does not indicate any consideration in exchange for the $150,000 gift and therefore, on the Agreement's face, there is no "return benefit." The Agreement specifies that "[i]n return for [APA]'s construction of the Required Improvements" and APA operating its business on the land, the City would provide ten years of tax abatements. Therefore, under the plain text of the Agreement, the *tax abatements*—not the $150,000 gift—are the return benefit that APA was set to receive for relocating to the City. That the Agreement as a whole is "consistent with

encouraging development of the Zone and generating economic development and increased employment opportunities in the City"[4] does not undermine the gratuitous nature of a "gift" nor does it undermine the text of the Agreement, which specifies that the tax abatements are what APA was to receive in exchange for relocating. Moreover, the other "return benefits" to the City for its gift that our dissenting colleague alludes to are his own invention given that they are found nowhere in the terms of the Agreement. Again, it is the terms of the Agreement that govern, not the dissent's *ipse dixit*. *See, e.g.*, *Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 888 ("As we have often said, in one way or another, '[a] contract's plain language controls, not what one side or the other alleges they intended to say but did not.'") (quoting *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017)). While our dissenting colleague would alternatively find consideration because the $150,000 gift "c[a]me with significant strings attached," he cites to no source of law for the proposition that strings attached equals consideration. *Post*, at 4. That is likely because his proposed rule impermissibly melds the second requirement (control over the gift retained by the City) and third requirement (consideration) under *Texas Municipal League*, rendering the second requirement superfluous. All told, the parties are stuck with the terms of their own Agreement. End of story.[5]

---

[4] The dissent's apparent public policy concern about not wanting to thwart economic development efforts has no bearing on our obligation to read contract terms according to their plain meaning. *Post*, at 3.

[5] Because the City received no return benefit for the $150,000 gift under the terms of the Agreement, we do not consider whether the City would have maintained sufficient control over the funds or whether giving funds for a corporation's relocation could ever have the "predominant purpose" of "accomplish[ing] a public purpose." *Tex. Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 384.

No. 21-10558

For all of these reasons, the district court was correct to dismiss APA's breach of contract claim, and the district court did not abuse its discretion in denying APA's motion for reconsideration and motion to amend judgment, because the Agreement is unambiguous that the $150,000 transfer was intended to be gratuitous. The pleadings "'reveal beyond doubt that [APA] can prove no set of facts' that would overcome the [affirmative] defense [of illegality] or otherwise entitle [it] to relief." *Bell*, 27 F.4th at 320 (quoting *Garrett*, 938 F.2d at 594). [6]

## B.

APA also alleges that the City violated the TOMA when it voted to terminate the Agreement. APA alleges the termination violated the TOMA because the agenda notice for the city council's meeting did not sufficiently apprise the public that the Agreement would be discussed or that any action might be taken with regard to it. Distilled to its essence, by way of the TOMA claim, APA wanted the district court to reinstate the Agreement. Because the district court determined that the Agreement was illegal, the court dismissed the TOMA claim as moot because there was no "agreement" to reinstate. APA agrees on appeal that its TOMA claim is predicated on a finding that the Agreement was valid and enforceable. Because we agree with the district court that the Agreement is unenforceable, we affirm the district court's Rule 12(b)(1) dismissal of the TOMA claim without prejudice as moot. We lack subject matter jurisdiction to review a moot claim. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

―――――――――――――――――――

[6] Separately, APA argues for the first time on appeal that the $150,000 gift was not "public funds" because the funds were provided to the City by a private entity. "Arguments not raised in district court will not be considered absent extraordinary circumstances." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012) (internal quotation marks omitted). APA points to no extraordinary circumstance.

## C.

APA's final argument is that the district court erred by dismissing a claim under 42 U.S.C. § 1983 alleging that the City violated APA's due process rights protected by the Fourteenth Amendment and a claim based on the Texas Constitution's due course of law clause. TEX. CONST. art. 1, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land."). As the parties recognize, Texas applies federal interpretations of due process to Texas due course of law claims. *Mosley v. Tex. HHS Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019); *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 438 (5th Cir. 2008). We therefore analyze both claims together.

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or *property interest* and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (per curiam)) (emphasis added). APA argues that the notice-and-cure provision of the Agreement created a protected property interest in the $150,000 gift *and* the tax abatements.

With respect to APA's argument that the notice-and-cure provision of the Agreement created a property interest in the $150,000 gift, as explained above, the portion of the Agreement gifting APA $150,000 is illegal under the Texas Constitution as a gift of public funds. "A promise for breach of which the law neither gives a remedy nor otherwise recognizes a duty of performance by the promisor is often called a void contract," and "*such a promise is not a contract at all.*" RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. a (Am. L. Inst. 1981) (emphasis added); *see also Watts v. Piligrim's Pride*

*Corp.*, No. 12-04-00082-CV, 2005 WL 2404111, at *3 (Tex. App.—Tyler Sept. 30, 2005, no pet.) ("A void contract is no contract at all; it binds no one and is a mere nullity."). Therefore, to the extent APA's due process claims are based on a protected property interest in the $150,000 gift, the claims fail.

Turning to APA's argument that the notice-and-cure provision of the Agreement created a property interest in the tax abatements, even assuming arguendo that the "gift" provision can be severed from the Agreement and that APA has a property interest in the tax abatements,[7] APA's due process and due course of law claims still fail. The purpose of due process is to "grant[] the aggrieved party the opportunity to present his case and have its merits fairly judged." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195 (2001) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (internal quotation marks omitted)). The Supreme Court has explained that where "an ordinary breach-of-contract suit" can fully protect the interest, there is no due process claim. *Id.* at 196. Because "[Texas] law affords [APA] sufficient opportunity to pursue that claim in state court, we conclude that the [City's termination of the Agreement] does not deprive [APA] of its claim for [tax abatements] without due process of law." *See id.* at 195.

For these reasons, taking APA's pleaded facts as true, there is no constitutional violation by the City. *See Whitley v. Hannah*, 726 F.3d 631, 637 (5th Cir. 2013).

## IV. Conclusion

We AFFIRM the judgment of the district court.

---

[7] It bears emphasis that there is no severability provision in the Agreement and APA has not argued the illegal provision dealing with the $150,000 gift is otherwise severable from the Agreement.

No. 21-10558

Cory T. Wilson, *Circuit Judge*, dissenting:

The majority concludes that the City's "gift" to APA was improper for lack of consideration. With greatest respect for my esteemed colleagues, I read the underlying Agreement differently, and therefore dissent.

The majority correctly points out that the Texas Constitution prohibits a city's "gratuitous" payments to corporations. *See* Tex. Const. art. III § 52(a). But a payment is not gratuitous if it "(1) serves a legitimate public purpose; and (2) affords a clear public benefit in return." *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 380, 383 (Tex. 2002) (citations omitted). And as the majority further recognizes, to determine whether such a payment "serves a legitimate public purpose," the city must "(1) ensure that the [payment]'s predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the [city] receives a return benefit." *Id.* at 383–84.

The majority does not analyze the first two requirements. *See ante* at 9 n.5. I briefly address each before turning to the third.

**I.**

It seems clear that the Agreement's "predominant purpose . . . accomplish[ed] a public purpose." *Id.* The Agreement states that the City approved it as a means toward further "Commercial/Industrial Development[.]" The Agreement sets forth obligations and benefits for both parties. APA was required, *inter alia*, (1) to make a $200,000 combined

13

capital investment to construct "Required Improvements"—that is, construction of a "laboratory and/or storage with infrastructure"; (2) to complete the Required Improvements within 15 months; and (3) to employ 50 people within five years of relocating and completing the Required Improvements (with intermediate employment level goals before that). The City was obligated (1) to "gift" APA "$150,000 . . . for infrastructure" as part of APA's "combined capital investment of at least $200,000.00" in the Required Improvements; and (2) to "grant to [APA] annual property tax abatements . . . for a period of ten . . . years[.]" These provisions—especially read in conjunction—show that the Agreement's "predominant purpose" would "accomplish a public purpose." *See id.* at 385.

## II.

The Agreement also satisfies the second requirement by allowing the City to retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment. Specific to the "gift" at issue, the Agreement preserves the City's ultimate control over how the $150,000 was to be spent by cabining the money's uses to "infrastructure, access/egress, and utilities" related to APA's Required Improvements. The Agreement also allows the City to inspect APA's property "at any time . . . throughout the [Agreement's] Term and the year following the Completion Date," and to "audit the financial and business records" of APA "that relate to [APA's] operations . . . at any time during the [Agreement's] Term and for one . . . year thereafter[.]" And if APA failed to complete the Required Improvements in a timely manner—

something that had to happen before the tax abatements would ever come into play—the City was entitled to terminate the Agreement. Read together, these provisions demonstrate that the City retained control over not only the tax abatements, but also the $150,000 payment at issue.

## III.

Irrespective of the foregoing, the majority concludes that the Agreement's lack of consideration is "fatal to APA's lawsuit." *Ante* at 6. The majority holds "that the City's $150,000 payment was intended to be a gratuitous transfer" for two reasons: (A) the Agreement calls the $150,000 payment a "gift," and (B) the Agreement indicates no "consideration in exchange for the $150,000 gift[.]" Though I understand the straightforward logic of the holding, I do not read the Agreement to confer an illegal $150,000 gratuitous transfer; instead, the payment was integral to the City's inducing APA to develop the site at issue, relocate there, and employ City residents. In other words, a classic economic development deal.[1]

## A.

When interpreting a written contract, the plain language controls. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 194 (Tex. 2022). But

---

[1] The majority mischaracterizes my dissent as "public policy concern about not wanting to thwart economic development efforts[.]" *Ante* at 9 n.4. Not so. Notwithstanding the Agreement's explicit purpose of "encouraging [land] development . . . and generating economic development and increased opportunities in [Mineral Wells]," I mention the Agreement's nature only to provide context for the mutual promises made by the City and APA discussed herein.

"words must be construed in the context in which they are used[.]" *Id.* (citation and internal quotation marks omitted). Courts must "examine and consider the entire writing in order to give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (citation omitted). Doing so in this case makes clear that the payment at issue is not actually "gratuitous" and thus does not traverse § 52(a) of the Texas Constitution.

True enough, Section 2 of the Agreement states that "[APA] shall make a Capital Investment of no less than $200,000.00 in the aggregate for Required Improvements *including $150,000.00 Gift* from [the City] to [APA] for infrastructure for Land to accommodate its manufacturing business." But Section 4 of the Agreement, to which the majority alludes in passing, if at all,[2] provides additional detail. That section refers to the $150,000 payment as a "*Grant*" and specifies that the funds are "for infrastructure, access/egress, and utilities[.]" Whatever the import of the differing monikers of gift/grant, it is clear that the $150,000 payment was to come with significant strings attached, i.e., mutual promises from APA: Use of those funds was restricted to installing utilities and other infrastructure that had to be completed—before the rest of the Agreement, with which the majority has

---

[2] The majority quips that any return benefits to the City for the $150,000 payment are "[my] own invention given that they are found nowhere in the terms of the Agreement," amounting to "*ipse dixit*" on my part. *Ante* at 9. But as quoted from the document itself above the line, the parties' Agreement makes clear that the $150,000 payment goes hand-in-glove with the City's plan to entice APA to relocate, *viz.*, it would immediately inure benefit to the City by assisting APA in the "installation of utilities of water, sewage, electric[,]"—and ultimately benefit the City by "encouraging redevelopment of the [Tax Abatement Reinvestment] Zone," "generating economic development[,]" and "increased employment opportunities in the City."

no qualms—could be effectuated. Reading Sections 2 and 4 of the Agreement together, the City effectively outsourced to APA site preparation required for the facility's integration into, *inter alia*, City services like utilities. And the $150,000 gift/grant was paired with the requirement that APA add a minimum of $50,000 of its own funds for infrastructure installation. Thus, the payment was not a mere gratuity to APA; the "gift" came with an expectation of significant return benefit to the City, via performance of specified obligations by APA.[3]

## B.

The majority also concludes that the $150,000 gift/grant lacks any return consideration from APA—demonstrating that it is an impermissible gratuity. *See ante* at 8–9. But that conclusion requires us to decouple the $150,000 payment from APA's construction of the Required Improvements, its required $50,000 minimum matching investment, the Agreement's employment benchmarks, and the tax abatements. The Agreement does not support such a reading; instead, it plainly links the $150,000 gift/grant and the tax abatements as parts of a package by which the City sought to entice APA's relocation to Mineral Wells.

---

[3] By contrast, "to make a valid gift, . . . [t]he donor . . . must deliver, either actually or constructively, the thing given to the donee, *releasing all dominion over the thing given and investing the donee with whatever dominion he possessed.*" *Gift*, BLACK'S LAW DICTIONARY (11th ed. 2019) (quoting W.W. Thornton, *A Treatise of the Law Relating to Gifts and Advancements* 2–3 (1893) (emphasis added)). That the City failed to "release all dominion" over the $150,000 further suggests that the payment to APA was not wholly gratuitous, but instead was "a [part of the] contract and not a gift[.]" *Id.*

Examining the Agreement *in toto* bears this out. APA only became eligible for the tax abatements if three things occurred: (1) timely completion of the Required Improvements, (2) "use of the [l]and" in accordance with the Agreement, and (3) APA's remaining "in compliance with" the Agreement. While the City's agreement to provide tax abatements was thus partly "[i]n return for [APA]'s construction of the Required Improvements," the Agreement makes clear that the $150,000 gift/grant was likewise an integral part of the deal, as it facilitated construction of the "Required Improvements." Put differently, the gift/grant was as much part of the consideration the City offered APA to make this "Commercial/Industrial Development Project" happen as the tax abatements were. The court should not invalidate the Agreement by dissecting interrelated requirements that compose a single, larger deal.

Two basic principles of contract law support this view. First, courts generally do not weigh the sufficiency of consideration. *Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A court of law normally will not inquire into the adequacy of consideration supporting a contract.") (citation omitted). The majority runs afoul of this principle by examining the Agreement's provisions in isolation, weighing its terms with promise-by-promise granularity to hold that only the tax abatements are supported by consideration. *See ante* at 9 ("[T]he tax abatements are what APA was to receive in exchange for relocating.").

Second, it is well-settled that a single consideration is sufficient to support multiple promises bargained for in an agreement. *Birdwell v.*

*Birdwell*, 819 S.W.2d 223, 228 (Tex. App.—Fort Worth 1991, writ denied); Restatement (Second) of Contracts § 80 cmt. a (1981) ("A single performance or return promise may thus furnish consideration for any number of promises."). Thus, APA's promise to relocate to Mineral Wells, i.e., to develop the site, build its facility, and employ specified numbers of employees, could properly support the City's promises of not only the tax abatements *but also* the $150,000 gift/grant to defray a portion of the initial costs of site development. The Agreement could properly set forth a package deal, obligating both sides to do various things, in sequence. And, critically, our task is not to pass judgment on whether the bargain struck by the parties was a good one—the question is whether the City's infrastructure gift/grant was supported by return obligations undertaken by APA or was merely "gratuitous." The Agreement makes clear it was the former, not the latter.

If the $150,000 "gift" from the City to APA stood alone, then clearly it would be improper, and I would readily join my esteemed colleagues. But because it does not, I would hold the parties to their bargain—to include the City's gift/grant to APA to defray costs of site development. *Cf. Texas Municipal League*, 74 S.W.3d at 383–84. I therefore respectfully dissent.[4]

---

[4] Because I would hold the Agreement to have been permissible under *Texas Municipal League*, I also respectfully depart from the majority's analysis of APA's Texas Open Meetings Act and due process claims—both of which rest on the premise that the $150,000 payment at issue violates the Texas Constitution.