**LINCOLN NATIONAL LIFE INSURANCE COMPANY, Appellant,**

v.

**Mason RITTMAN, Appellee.**

**No. A14–89–00562–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 1990.

Lane D. Thibodeaux, Bryan, for appellant.

Elmer McVey, Bryan, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

Two years ago we denied restitution to an insurance company that had mistakenly overpaid a hospital for medical treatment to the daughter of an insured. *Lincoln Nat'l Life Ins. v. Brown Schools, Inc.*, 757 S.W.2d 411 (Tex.App.—Houston [14th Dist.] 1988, no writ). As the style of our earlier opinion reflects, the suit there was brought against the health care provider. In this companion case the insurer seeks restitution directly from the insured.

Our recitation of facts in the former case remains applicable, although completeness requires us to describe the procedural status of the litigation. Appellant originally sued the insured and the hospital in a single action. After rendering a partial summary judgment for the hospital, the trial court severed that part of the suit and the former appeal followed. Because we denied recovery from the hospital, appellant returned to the trial court and pursued its claim against the insured. But instead of putting various witnesses on the stand, the attorneys simply stipulated to the admissibility of the evidence adduced at the earlier stage of the suit. So, only the insured himself testified at the second stage. He stated that he could not have kept his daughter in treatment without the extended payments, and that he would have withdrawn her if he had had to pay the medical costs personally.

Appellant again invokes the equitable principle of restitution, arguing that if recovery did not lie against the hospital (whom we likened to a bona fide purchaser for value), then it should logically be available from the insured himself. In *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex.1982), the supreme court recognized this well-settled rule of restitution, observing that the "purpose of such restitution is to prevent unconscionable loss to the party paying out the funds and unjust enrichment to the party receiving the payment. Restatement of Restitution § 1." It would seem worthwhile to examine the principles set out in the Restatement. Section 1 articulates a broad principle of general applicability: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." That formulation serves as a starting point for analyzing particular cases,[1] such as when one party overpays another by mistake.

Building on this general rule, § 18 covers the case of mistaken overpayment:

A person who has entered into a contract binding upon him and has paid money to the other party thereto under an erroneous belief induced by a mistake of fact that the terms of the contract required such payment, is entitled to restitution from the other, except where the mistake is only as to the time of payment.

The drafters were careful to note that recovery would not necessarily be defeated merely because the mistake amounted to negligence; rather, any negligence simply counts as a factor in the determination of whether recovery is equitable. *Id.* com-

---

1. On this point, see J. CALAMARI & J. PERILLO, CONTRACTS § 15–2, at 571 (2d ed. 1977) (footnotes omitted). The authors explain § 1 and how it should be viewed:

It should be emphasized, however, that this is a principle which underlies many particular rules rather than an operative rule. Taken as a rule it would at the same time be too broad and too narrow. Too broad, because there are situations in which one's sense of justice would urge that unjust enrichment has occurred, yet no relief is available. Too narrow, because very often restitution is available where there has been no enrichment of the defendant but the plaintiff has suffered a loss.

ment c; *see also* § 59 (claimant's own negligence does not preclude recovery). Indeed, "[i]f the law were otherwise, the availability of relief for mistake would be greatly limited." E. FARNSWORTH, CONTRACTS 662 (1982). Point of error one, which says a negligent unilateral mistake will not defeat a restitutionary claim, therefore correctly states the law but presents no ground for reversal and is accordingly overruled.

■ It might well be asked, given that a claimant's negligence is no defense to an action for restitution, what is a valid defense? One defense is a change of circumstances. Section 69(1) provides:

The right of a person to restitution from another because of a benefit received because of mistake is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution.

There is also a more global defense of change of circumstances stated in § 142(1), and it reads exactly the same as the passage excerpted above, save for the omission of the words "because of mistake." Regrettably, the drafters failed to include in their comments to § 69 a critical point which they made after laying out the broader defensive rule in § 142—namely who bears the burden of proving whether circumstances have changed. Comment g to § 142 squarely places that onus on the defendant: "Where the claimant has proved that the recipient has received things under circumstances which would create the right to restitution, the recipient has the burden of proving a sufficient change of circumstances to make it inequitable for the claimant to have restitution."[2] Against this background one can

better understand the supreme court's comment in *Bryan v. Citizens Nat'l Bank* that "[g]enerally, a party who pays funds under a mistake of fact may recover restitution of those funds if the party to whom payment was made has not materially changed his position in reliance thereon." 628 S.W.2d at 763. While what the court said is indisputably accurate, it is ambiguous as to the burden of proof question. The ambiguity is altogether explainable because burden of proof had nothing to do with the case. For although the statement in *Bryan* could be read as converting the change of position defense into an element of the plaintiff's cause of action, the same would be true had the court made any of a number of equally accurate statements of law, such as "plaintiff may recover for mistaken overpayment if the statute of limitations has not run," or "plaintiff may recover for mistaken overpayment if res judicata does not bar the claim." But those assertions in no way imply transformation of an affirmative defense into an essential element of the *plaintiff's* case.[3]

The issue comes into play in this case because appellant objected to testimony by appellee when one segment of the discussion moved into the area of estoppel. Appellee had never pleaded estoppel (or "change of circumstances"). *See* TEX.R.CIV.P. 94. The court therefore sustained the objection, at which point appellee's attorney boldly informed him he could answer the question—and he did. One is left to wonder whether the court disregarded that testimony as inadmissible, or considered it as wholly legitimate evidence adduced without a motion to strike. One is also left to wonder what to make of the agreed submission of all evidence from the prior proceeding, considering that we do

**2.** True, the Restatement fails to fix the burden of pleading the defense, but the drafters deliberately left out references to procedural requirements in courts of law and equity which have no specific application to restitutionary remedies. See Restatement, General Scope Note at 3.

One may reasonably conclude that the Texas rules of procedure apply with full force. See TEX.R.CIV.P. 94 (requiring pleading of any defense in confession and avoidance).

**3.** This is evidently the majority rule. E.g., *Sawyer v. Mid–Continent Petroleum Corp.*, 236 F.2d 518 (10th Cir.1956); *Hulme v. Stumma*, 204 N.W.2d 632 (Iowa 1973); *Jonklaas v. Silverman*, 117 R.I. 691, 370 A.2d 1277 (1977); see Annot., What constitutes change of position by payee so as to preclude recovery of payment made under mistake, 40 A.L.R.2d 997, 1001 (1955) ("The burden of showing that the payee's position has been changed to his detriment is ordinarily on the payee.").

**794**

not have any of that evidence. The only materials we have from the first appeal do not include any depositions, exhibits, or trial testimony. So, whatever the trial court took judicial notice of cannot be examined. For that reason we reject appellant's challenges to the sufficiency of the evidence. *See* Tex.R.App.P. 50(d). Points of error two and three are overruled.

Appellant sees a fatal conflict in two of the findings of fact. Those findings posit that (a) overpayments were solely due to appellant's mistake, and (b) appellee was unaware of the policy terms and made no effort to determine what they were. The gist of this argument is that part of the overpayment problem must have been attributable to appellee since he never had any idea what the policy said, yet the court's prior finding assigned all fault to appellant. We perceive no conflict. Appellant overpaid on the basis of its own errors. Appellee had no duty to ferret out those policy terms, where he never purchased the coverage in the first place but merely accepted it as a benefit of employment.[4] Point of error four is overruled.

There is yet a deeper reason for denying the restitutionary claim. We simply do not think recovery would be equitable under the circumstances. That, after all, remains the test. Perhaps this approach lacks analytical rigor, but it was precisely a scrupulous adherence to rigor that resulted in the growth of the courts of equity in the first place. While we do not deprecate the logic of appellant's legal position, there sometimes arise cases where law goes only so far and the chancellor must step in.

The judgment is affirmed.

---

4. Compare Restatement § 142 Illustration 3:
   "A sells goods to B for $400. By mistake A *delivers other goods* worth $400. Without examining the goods, unaware of the mistake, but without misrepresentation, B sells them to C who pays B $500 for them. A is entitled to no restitution from B, who is entitled to keep the $100 difference as a profit innocently acquired."