ACCEPTED
03-16-00071-CV
12444515
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/30/2016 1:32:30 PM
JEFFREY D. KYLE
CLERK

Appeal Cause No. 03-16-00071-CV

_____

<table>
<tr><td>In the<br>Third Court of Appeals<br>Austin, Texas</td><td>FILED IN<br>3rd COURT OF APPEALS<br>AUSTIN, TEXAS<br>8/30/2016 1:32:30 PM<br>JEFFREY D. KYLE<br>Clerk</td></tr>
</table>

_____

Jeremie Gordon and Amber Arnold-Gordon,
Appellants/Defendants,

v.

James B. Nickerson and Julia A. Nickerson, Trustees of the Nickerson
Revocable
Living Trust,
Appellees/Plaintiffs.

_____

From the 250th District Court for Travis County, Cause No. D-1-GN-15-
000917,
The Honorable Karin Crump, Presiding.

_____

**APPELLEES' BRIEF IN RESPONSE**

_____

Jason W. Snell
Bar No. 24013540
John Robert Skrabanek
Bar No. 24070631
The Snell Law Firm, P.L.L.C.
221 West 6th Street, Suite 900
Austin, Texas 78701
Telephone: (512) 477-5291
Facsimile: (512) 477-5294
Email:      firm@snellfirm.com
ATTORNEYS FOR APPELLEES

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ............................................ viii

COUNTERSTATEMENT OF THE CASE.............................................................1

I.     SUMMARY OF APPELLEES' RESPONSE..............................................6

II.    ARGUMENT IN RESPONSE..................................................................7

    A.  Two separate standards of review apply to the trial court's final judgment
        in this case. ......................................................................................7

        1.  The standard of review in an appeal from a permanent injunction is
            whether a clear abuse of discretion occurred. .......................................7

        2.  The standard of review in an appeal from the confirmation of an
            arbitrator's award is de novo but "extremely narrow." .........................8

    B.  The Gordons waived all arguments regarding the illegality of the contract
        by failing to object to the district court. ......................................................9

    C.  The contract in question is not illegal. .......................................................12

        1.  There is no illegality on the face of the contract. ...................................12

        2.  Even if the contract were illegal in theory, it is not void because it can
            be performed in a legal manner. ..............................................................14

    D.  The district court's final judgment resolves any issues regarding the
        potential illegality of the contract. ............................................................16

        1.  Texas Property Code § 12.002(g) allows the property to be subdivided
            and sold through a court order.............................................................. 16

2. The district court's final judgment orders the property to be sold and is therefore a "partition by a court" under Property Code § 12.002(g). .... ...…………………………………………………………………17

3. The Gordons' fear of criminal prosecution is unfounded ................. 19

E. The district court did not modify the arbitrator's ruling. ...........................19

1. The plain text of the district court's order confirms the ruling. ...........19

2. The additional damages awarded to the Nickersons were not related to arbitration and therefore are not a modification to the arbitrator's award.........................................................................................................20

3. The district court's award of additional damages is a "cost" or "disbursement" under Civil Practice & Remedies Code § 171.091(b). .................................................................................................................21

F. The district court did not err in awarding attorney's fees. .........................22

1. Fees were available under Civil Practice & Remedies Code § 38.001 for breach of the MSA. .......................................................................22

2. Attorney's fees were available for efforts to confirm the arbitration award.............................................................................................25

3. The fees were not "non-segregated." ...................................................25

G. All the remaining points of error asserted by the Gordons are without merit. .............................................................................................27

III. CONCLUSION AND PRAYER FOR RELIEF ..........................................30

CERTIFICATE OF COMPLIANCE ................................................................32

CERTIFICATE OF SERVICE .........................................................................32

ii

APPENDIX…………………………………………………………………33

# TABLE OF AUTHORITIES

**Cases**

*After Hours, Inc. v. Sherrard*, 456 S.W.2d 227, 229 (Tex. App.—Austin 1970, rev'd on other grounds) .................................................................................13

*Air Routing Int'l Corp. v. Britannia Airways, Ltd.*, 150 S.W.3d 682 (Tex. App.—Houston [14th Dist.] 2004, no pet.)....................................................27

*Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) .....................................................................................................9

*Bank of Am., N.A. v. Hubler*, 211 S.W.3d 859, 865 (Tex. App.—Waco 2006, pet. granted, judgm't vacated w.r.m.)........................................................................23

*CRC-Evans Pipeline Int'l v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ) ...............................................................................8

*Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied) ................................................................................................ 9, 19

*CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238-39 (Tex. 2002) .........................9

*Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir. 1994) ................25

*Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 784-85 (Tex. App.—Houston [14th Dist.] 2004, no pet.) .............................................................................12

*Franklin v. Jackson*, 847 S.W.2d 306, 309, 310 (Tex. App.—El Paso 1992, writ denied) ................................................................................................ 14, 15

*Herring v. Heron Lakes Estates Owners Association,* No. 14-09-00772-CV, 2011 Tex. App. LEXIS 5 (Tex. App.—Houston [14th Dist.] 2011, pet. dismissed ......... ................................................................................................ 24, 25

*Hisaw & Assoc. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.,* 115 S.W.3d 16, 18 (Tex. App.—Fort Worth 2003, pet. denied)............................ 9, 27

*In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied) ...............................................................................................8

*IPCO-G & C Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255-56 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)...................................................9

*Lee v. Bowles*, 397 S.W.2d 923, 926 (Tex. Civ. App.—San Antonio 1965, no writ) ...........................................................................................................................7

*Lewis v. Davis,* 145 Tex. 468, 472, 199 S.W.2d 146, 148-49 (1947)…………13, 14

*Lincoln Nat'l Life Ins. Co. v. Rittman*, 790 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1990, no writ) .....................................................................................30

*Mariner Fin. Group, Inc.,* 79 S.W.3d at 35 ...............................................................8

*McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) .........................8

*Mullin v. Nash-El Paso Motor Co.,* 250 S.W. 472, 475 (Tex. Civ. App.—El Paso 1923, writ ref'd)......................................................................................................13

*Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692 (5th Cir. 1989).........................23

*Priest v. Texas Animal Health Comm'n.*, 780 S.W.2d 874, 875-876 (Tex. App.— Dallas 1989, no writ))...............................................................................................7

*Scoville v. Springpark Homeowner's Association, Inc.,* 784 S.W.2d 498, 502 (Tex. App.—Dallas 1990, writ denied)...............................................................................13

*Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 863-64 (Tex. App.—Houston [1st Dist.] 2015, no pet.) .........................................................................................25

*Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567-68 (Tex. App.— Dallas 2008, no pet.)..................................................................................................9

*Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied)............................................................................................8

*TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ............................................................................................................8

*Tyra v. Houston*, 822 S.W.2d 626, 631 (Tex. 1991)......................................... 7, 27

v

*Wade v. Jones*, 526 S.W.2d 160, 162-63 (Tex. Civ. App.—Dallas 1975, no writ).....
.............................................................................................................. 14, 15

*Wal-Mart Stores v. McKenzie,* 997 S.W.2d 278, 280 (Tex. 1999)................... 12, 21

**Statutes**

*Black's Law Dictionary (9th Ed.) (2009)* ....................................................... 18, 21

*Tex. Civ. Prac. & Rem. Code § 171.091(b)*.......................................................21

*Tex. Civ. Prac. & Rem. Code § 171.091(b)(1)* ..................................................22

*Tex. Civ. Prac. & Rem. Code § 171.091(b)(2)* ..................................................21

*Tex. Civ. Prac. & Rem. Code § 38.001*........................................................ 22, 23

*Tex. Civ. Prac. & Rem. Code § 38.001(8)*..................................................... 23, 31

*Tex. Loc. Gov't Code § 212.004* ........................................................................9

*Tex. Loc. Gov't Code § 232.001* ........................................................................9

*Tex. Loc. Gov't Code § 212.018(a)* ..................................................................19

*Tex. R. App. P. 33.1*...................................................................................... 11, 21

*Tex. R. App. P. 44.1(a)*....................................................................................27

*Tex. R. Civ. P. 43.4* ........................................................................................31

*Tex. R. Civ. P. 683* ...................................................................................... 27, 29

*Tex. Prop. Code § 12.002(c).*...........................................................................17

*Tex. Prop. Code § 12.002(g)*..................................................................... 16, 17, 18

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe that oral argument is necessary in this matter. The written record is substantially developed such that oral argument would not reasonably aid the Court's decisional process.

# COUNTERSTATEMENT OF THE CASE

This is an appeal from Appellees James B. Nickerson and Julia A. Nickerson's ("the Nickersons") suit against Appellants Jeremie Gordon and Amber Arnold-Gordon ("the Gordons") to compel the Gordons to sell a portion of their lot to the Nickersons. The Nickersons own a home located at 14258 FM 2769, Leander, TX 78641, where they live with their three children and use as their family homestead. The Gordons own the adjacent lot, which is not their primary residence. *C.R.* at 46. The prior owners of both lots in question signed a Well Use Easement Agreement ("easement") that grants the Nickersons an "irrevocable, exclusive, perpetual easement" to use the water well on the Gordons property, which serves as the sole source of water to the Nickersons' homestead property. *C.R.* at 13-18. The owners prior to the Nickersons paid for the costs of using and maintaining the well and also used it as their sole source of water dating as far back as 1995. *C.R.* at 46 ¶ 14-16; *C.R.* at 19-24.

In January 2015, Jeremie Gordon wrote to the Nickersons informing them of his intention to disconnect the well piping so that the Nickersons would no longer be able to use the well. *C.R.* at 18 ¶ 4; *C.R.* at 29. The Nickersons then filed suit against the Gordons to prevent the Gordons from taking their only access to potable water.

On May 11, 2015, after mediation with Claude Ducloux ("mediator" or "arbitrator"), the parties reached an arrangement whereby the Nickersons agreed to buy the portion of the Gordons' land on which the well was located (the "conveyance property") outright for $32,500.00, thereby resolving any issues surrounding the Nickersons' access to the well via the easement. *C.R.* at 67-69. The negotiated Mediated Settlement Agreement ("MSA") between the parties called for the Nickersons to survey the portion of the property they were buying and to close within sixty days. *Id.* at 67 ¶ 1. The parties also agreed that "the rights of [the Nickersons] to continued use of the well shall be exclusive and remain uninterrupted." *Id.* ¶ 8. Thereafter, the parties would work together to vacate the prior easement agreement. *Id.* ¶ 4. Finally, the parties agreed to arbitrate any disputes related to the agreement with the arbitrator and that such arbitration would be binding on the parties. *Id.* at 68.

Thereafter, a dispute arose surrounding the placement of the conveyance property's boundary line. This dispute was successfully arbitrated in favor of the Nickersons. *C.R.* at 57-58. A second dispute then arose after the parties disputed whether the property had to be replatted prior to conveyance. The arbitrator again found in favor of the Nickersons and issued a very thoughtful ruling that the property could be conveyed by metes and bounds, with the understanding and

expectation that it would not be eligible for city services, and the property did not need to be replatted. *C.R.* at 60-65.

The arbitrator issued his ruling that the sale should move forward on August 27, 2015. Over the next two weeks, presumably out of malice or animus, Mr. Gordon then:

> Physically excluded the surveyor, Chuck Walker, from the conveyance property to prevent completing the necessary survey.
>
> Posted numerous "No Trespassing" signs on the conveyance property and strung up a **barbed wire fence** within mere feet of the Nickerson children's play area and trampoline.
>
> Cruelly **cut down** at least eight mature, healthy trees on the conveyance property with a chainsaw, leaving three-foot tall stumps in their place.

See *C.R.* at 49-51 ¶¶ 22-30.

The Nickersons sought a temporary injunction to, amongst other things, stop Mr. Gordon from intentionally destroying the land he was already contractually obligated to sell them. *C.R.* at 51-53. On September 24, 2015, the trial court held a hearing on the temporary injunction, where each of Mr. Gordon's bad acts was well-documented and received into evidence by the court. See, e.g., *6 R.R.* at 5-19

(Exh. 1). The court granted the Nickersons' application for temporary injunction and set the case for a final hearing. *C.R.* at 101-03.

The final hearing occurred on October 21, 2015. Prior to the hearing, *both* the Nickersons and the Gordons sought confirmation of the arbitrator's award and asked the trial court to approve the sale of the property. See *C.R.* at 45-55, 105-11. At the final hearing, the district court:

> Confirmed the arbitration award in its entirety;
>
> Ordered the Gordons to complete the sale of the property to the Nickersons;
>
> Ordered the Gordons to pay the Nickersons an additional $8,571.00 for the cost to replace the eight mature trees that Mr. Gordon cut down;
>
> Awarded the Nickersons $9,563.48 in reasonable and necessary attorney's fees for the Gordons' willful breach of the MSA and the effort expended by the Nickersons in having to confirm the arbitration award;

Entered a permanent injunction preventing the Gordons' from further defacing or damaging the property prior to its sale to the Gordons.[1]

*C.R.* at 124-26.

After the court entered its final judgment, the Gordons asked for findings of fact and conclusions of law. *C.R.* at 143-44. The court issued its findings on November 30, 2015. *C.R.* at 162-65. The Gordons then filed a motion for new trial on December 8, *C.R.* at 166-76, which the court denied on January 6, 2017. *C.R.* at 187.[2] Rather than simply allow the sale of the property to move forward, which at this point had already been mediated, bindingly arbitrated, and affirmed by the district court, and which the Gordons had actively **sought to occur** at all prior stages of the dispute **before** they malevolently and permanently altered the nature of the conveyance property, the Gordons filed a notice of appeal on February 4, 2016, and this appeal followed. *C.R.* at 188-89.

---

[1] Though in substance the district court issued a permanent injunction, in reality, should this Court affirm and approve the ultimate transfer of the property, the injunction is only temporary because the actions it prohibits the Gordons from taking will all be moot once the conveyance property is owned by the Nickersons.

[2] During this period, in accordance with the district court's final judgment, the Nickersons hired an attorney and title company to prepare the necessary paperwork to effectuate the sale. *C.R.* at 125 ¶ 5. The Nickersons also placed the entire purchase price into escrow, where it has remained since. *4 R.R.* at 24:20-25. Despite this, the Gordons refuse to sign the deed in violation of the district court's order even though the Nickersons stand ready to complete the sale. See *C.R.* at 126 ("IT IS FURTHER ORDERED . . . that Plaintiffs shall have all writs of execution, possession, and other process necessary to enforce this judgment.").

# I.   SUMMARY OF APPELLEES' RESPONSE

Even though the Gordons negotiated to sell the conveyance property to the Nickersons and signed a valid, legally binding contract to do so, and even though they wished to move forward with the sale at arbitration and at all prior proceedings before the district court, for the very first time on appeal, they request this Court to declare the MSA illegal and void and to prevent the property from being sold. Not only did the Gordons not even formally plead the defense of illegality before the district court, they actively asked the court to bless the sale of the property at every prior phase of this litigation. Under basic principles of fairness, equity, and the rules regarding preservation of error, this Court should preclude the Gordons from even seeking the relief they now request, namely a reversal of all of their prior positions.

Furthermore, though the Gordons now request this Court to declare the MSA illegal, the MSA is legal on its face, and its legality was further validated in arbitration and the district court's final judgment that implicitly affirmed the same.

Finally, and perhaps most importantly, the Gordons ignore the applicable standard of review throughout their lengthy appellate brief. As will be shown *infra*, this Court's review of the trial court's actions is an "extremely narrow" review to determine only whether the trial court showed a "clear abuse of discretion." Each and every one of the Gordons' points of error was either not preserved for judicial

review with the lower court or does not constitute reversible error under the applicable standards of review. In any event, the record is clear that the district court committed no reversible error, and this court should AFFIRM its judgment.

## II.    ARGUMENT IN RESPONSE

**A.    Two separate standards of review apply to the trial court's final judgment in this case.**

The final judgment from which the Gordons appeal accomplished two things.  First, it confirmed the arbitrator's June 5 and August 27, 2015 awards. *C.R.* at 125 ¶ 1. Second, it granted a permanent injunction to the Nickersons to prevent the Gordons from taking specific actions with regard to the property. *Id.* at 126. These two separate actions carry separate standards of review.

### 1.    The standard of review in an appeal from a permanent injunction is whether a clear abuse of discretion occurred.

The decision whether to grant a permanent or temporary injunction is ordinarily within the sound discretion of the trial court. *Lee v. Bowles*, 397 S.W.2d 923, 926 (Tex. Civ. App.—San Antonio 1965, no writ). On appeal, review is limited to whether the trial court's ruling constituted a clear abuse of discretion. *Tyra v. Houston*, 822 S.W.2d 626, 631 (Tex. 1991) (citing *Priest v. Texas Animal Health Comm'n.*, 780 S.W.2d 874, 875-876 (Tex. App.—Dallas 1989, no writ)). Texas courts have opined that a clear abuse of discretion occurs when the trial court's "decision is so clearly wrong as to lie outside the zone within which

reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). Upon review, appellate courts are prohibited from substituting their judgment for the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Further, in reviewing an order granting or denying a temporary injunction, all legitimate inferences from the evidence are reviewed in a manner most favorable to the trial court's judgment. *Id.* (citing *CRC-Evans Pipeline Int'l v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ)).

## 2. The standard of review in an appeal from the confirmation of an arbitrator's award is de novo but "extremely narrow."

In this case, both parties filed motions to confirm the arbitration awards instead of motions for summary judgment on the arbitration awards. *C.R.* at 53, 105. For this reason,[3] review of the trial court's decision to confirm the arbitration award is *de novo*, and an appellate court may review the entire record. *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied). Because Texas law favors arbitration, however, review is "extremely

---

[3] The standard of review applicable to a judgment confirming an arbitration award is affected by the nature of the proceedings utilized by the trial court. See *Mariner Fin. Group, Inc.,* 79 S.W.3d at 35 (affirming court of appeals' judgment applying summary judgment standard of review to judgment obtained via summary judgment). But the summary judgment standard of review is inapplicable to a motion to confirm an arbitration award. See *Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

narrow." See *Hisaw & Assoc. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.,* 115 S.W.3d 16, 18 (Tex. App.—Fort Worth 2003, pet. denied); *IPCO-G & C Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255-56 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). All reasonable presumptions are indulged in favor of the award, and none against it. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567-68 (Tex. App.—Dallas 2008, no pet.).

An arbitration award has the same effect as a judgment of a court of last resort; courts must protect against unwarranted judicial interference of arbitration awards based on generally claimed violations of public policy. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238-39 (Tex. 2002); *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Review of an arbitration award is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied). Arbitration awards are entitled to great deference by the courts. *Id.*

**B.     The Gordons waived all arguments regarding the illegality of the contract by failing to object to the district court.**

In their first point of error, the Gordons complain that the trial court erred by enforcing a contract that they assert violates certain provisions of the Local Government Code and City of Austin Code of Ordinances. Specifically, the Gordons protest that Tex. Loc. Gov't Code § 212.004 and § 232.001 require the lot

to be platted prior to sale. *Appellants' Brief* at 20-21. Because there is no dispute that the lot in question cannot be platted prior to sale, the Gordons assert that selling the land at all is illegal and thus the contract in question is also illegal. *Id.* at 23-24.

However, the record is clear on its face that the Gordons failed to object to the claimed illegality of the contract with the trial court. Foremost, the Gordons did not plead the affirmative defense of illegality of the contract before the trial court. *C.R.* at 33 ¶ 2. Instead, they only asserted defenses of equitable estoppel, repudiation, and waiver. *Id.* In fact, during the hearing final hearing on this matter before the district court, the Gordons repeatedly asked the court to *approve* the sale of the property, which is the exact opposite of the relief they now request on appeal. *3 R.R.* at 32:22-33:13. Counsel for Mr. Gordon stated at the hearing:

> "*Mr. Gordon is prepared to agree to all the terms of the arbitration*, but we need the court order for him to not have that civil and criminal liability."
>
> . . .
>
> "We're – *we're ready to sell the property, we're ready to move forward*, we're ready to have a debate over whether or not Mr. Gordon was within his rights to cut down these trees, but we've got to get the judgment or else he's going to have civil and criminal liability and we're going to have to come back and try to unpop this popcorn."

*Id.* at 35:1-36:8 (emphasis added).

Again, after the district court's entered its final judgment and the Gordons

filed a "Motion to Modify or Alter Judgment, or Alternatively, Motion for New Trial," they failed to seek the relief they now request, namely, rescission of the contract. *C.R.* at 166-76. Instead, they requested that the lower court approve the very arbitration award for which they now seek reversal. As their proposed relief, the Gordons specifically requested "that the Court modify its judgment and issue an Amended Final Judgment *in conformance with the August 27, 2015 Arbitration Award* presented to the Court in Plaintiffs' Motion to Confirm Arbitration Award." *Id.* at 175 (emphasis added).

Even the district court's final judgment outlines that the parties *agreed* they were both seeking for the contract to be enforced. The judgment unambiguously stated that "[t]he parties seek confirmation of the arbitration awards rendered by arbitrator Claude E. Ducloux on June 5, 2015 and August 27, 2015 ('the Arbitration Awards'), pursuant to an agreement of arbitration between Plaintiffs and Defendants." *C.R.* at 124.

It is a well-known appellate principle that the failure to object to alleged errors before a trial court waives consideration of the errors on appeal. Under Texas Rule of Appellate Procedure 33, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was actually made to the trial court. *Tex R. App. P. 33.1*. Further, in order to be preserved for review, not only must the complaint actually be made but it must also clearly be ruled upon. *Id.*

§ (a)(2). See also *Wal-Mart Stores v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999) ("To preserve a complaint for appellate review, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling."); *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 784-85 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (error was not preserved for appeal when trial court did not rule on special exception).

Here, the record is void of requests by the Gordons at the October 21, 2015 Hearing on the Merits and Motion to Confirm an Arbitration Award to void, strike, or otherwise deny enforcement of the parties' original contract to sell a portion of the property. It is axiomatic under basic standards of appellate review that they cannot now request this Court to grant the exact opposite relief that they requested the trial court to grant. Not only did the Gordons not want the contract to be voided by the district court, they actively *sought for* the district court to enforce it. See, e.g., *C.R.* at 110 (prior to the final hearing on the merits, Defendants asked the district court to "enter[] judgment affirming the Arbitration Award dated August 27, 2015 . . ."). Therefore, the Gordons waived all claims that the contract is illegal in the trial court, and they are now precluded from seeking to rescind the contract in this Court.

## C. The contract in question is not illegal.

### 1. There is no illegality on the face of the contract.

The Gordons assert in their first point of error that the contract in question is illegal and void because the property is not eligible for replatting, and replatting must occur before the property can legally be transferred to the Gordons. *Appellants' Brief* at 22-24. In support, they cite *Lewis v. Davis,* 145 Tex. 468, 472, 199 S.W.2d 146, 148-49 (1947), for the proposition that a contract to do a thing which cannot be performed without a violation of law is void. While true, the proposition is incomplete. It is likewise true that where "the illegality does not appear from the contract itself or for the evidence necessary to prove [the contract], but depends upon extraneous facts, the defense [of illegality] is new matter, and, to be available, it must be pleaded." *Mullin v. Nash-El Paso Motor Co.,* 250 S.W. 472, 475 (Tex. Civ. App.—El Paso 1923, writ ref'd); see also *After Hours, Inc. v. Sherrard*, 456 S.W.2d 227, 229 (Tex. App.—Austin 1970, *rev'd on other grounds*) (illegality must be pleaded and presented to the court when not on the face of the contract).

The MSA is nothing more than a contract for the sale of land. In Texas, parties have the right to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal. *Scoville v. Springpark Homeowner's Association, Inc.,* 784 S.W.2d 498, 502 (Tex. App.—Dallas 1990, writ denied). The MSA is not a contract for murder, conspiracy, or any other illegal act typically contemplated by the defense of

illegality. The MSA simply obligates the Gordons to sell the conveyance property to the Nickersons, and is clearly valid on its face.

Further, the Nickersons' land use expert, Beryl Crowley, testified that it was not illegal for the sale of the property to go through via metes and bounds only, and the arbitrator relied on Ms. Crowley's testimony in reaching his own independent conclusion that the contract was not illegal. *C.R.* at 63-64 ("[I]t is not unreasonable to find that all of these Codes, Rules and Statutes seem to reflect an intention that the parties cannot create an illegal lot with an expectation that it would be subject to [the] same rights as legally-platted lots . . . I find that, in accordance with the testimony of Ms. Crowley, *it is not illegal for the sale to go through*."). *Id.* at 64 (emphasis added). Under the Gordons' newly-asserted interpretation of the contract on appeal, it would be impossible for the property to ever be sold to any party because it cannot be platted. Texas public policy would not favor such an interpretation.

> **2.** **Even if the contract were illegal in theory, it is not void because it can be performed in a legal manner.**

An illegal contract is one in which the parties undertake what the law forbids. *Franklin v. Jackson*, 847 S.W.2d 306, 309 (Tex. App.—El Paso 1992, writ denied). Even so, a contract which could have been performed in a legal manner will not be declared void simply because it may have been performed in an illegal manner. *Id.* (citing *Lewis*, 199 S.W.2d at 148-49); *Wade v. Jones*, 526 S.W.2d

160, 162-63 (Tex. Civ. App.—Dallas 1975, no writ). Courts must presume that contracts are legal, and the burden to prove illegality is on the party asserting it, in this case,[4] the Gordons. *Franklin*, 847 S.W.2d at 310.

The facts in *Franklin* are analogous to this case. In *Franklin*, the parties entered into a multi-year agreement in which the seller agreed to sell the buyer its peanut allotment annually for a term of four years. Later, after the parties disputed who had breached the contract, the buyer asserted that the contract was illegal and void and moved for summary judgment on these grounds. *Id.* at 308. The trial court granted summary judgment and rescinded the contract based on the buyer's assertion that multi-year sales contracts of peanuts were *per se* illegal under then-existing federal U.S. Department of Agriculture rules. *Id.* Under USDA procedures, such contracts were only legal if approved by a specific committee, and the committee was not legally allowed to approve multi-year agreements. *Id.* at 310. The court of appeals reversed because the contract *could* have been performed in a legal manner; namely, the committee could have "simply indicate[d] that [the contract] would only be approved one year at a time." *Id.*

Similarly, the contract in this case can be performed in a legal manner. The City of Austin's decision that the property is not eligible for platting does not state

---

[4] But note that the Gordons only assert that the contract is illegal *now*; they asserted the exact opposite before the district court.

that it can *never* be replatted or that the sale of the property cannot go through; it only states that the property is "not eligible to receive utility service until it has been included in a recorded subdivision plat." *6 R.R.* at 65-68 (Ex. 4). But this fact was already contemplated and embodied in the arbitrator's award. *C.R.* at 136 ("other than a special warranty that the Grantees 'own the dirt' being conveyed . . . the Nickersons acknowledge that [they] are taking this fractional tract without any expectation or understanding on their (the Grantee's) part, nor warranty, promise, or representation by the Gordons that the land being purchased by metes and bounds will ever be able to qualify for governmental services."). Thus, the contract can be performed in a legal manner because the only limitation on the property is that it is excluded from city services, which the parties already knew and bargained for, rather than the inability of the property to be sold at all.

**D.     The district court's final judgment resolves any issues regarding the potential illegality of the contract.**

**1.     Texas Property Code § 12.002(g) allows the property to be subdivided and sold through a court order.**

The arbitrator ruled on August 27, 2015 that the sale of the property by metes and bounds only was not illegal under Texas law. *C.R.* at 135 ("Although I am cognizant that the issue of illegality is always preserved for the parties to take to litigation, I find that, in accordance with the testimony of Ms. Crowley, it is not

illegal for the sale to go through."). Even so, under Chapter 12 of the Texas

Property Code:

> (b)  A person may not file for record or have recorded in the county clerk's office a plat or replat of a subdivision of real property unless it is approved as provided by law by the appropriate authority . . .

> (c) [A] person who subdivides real property may not use the subdivision's description in a deed of conveyance, a contract for a deed, or a contract of sale or other executory contract to convey that is delivered to a purchaser unless the plat or replat of the subdivision is approved and is filed for record with the county clerk of the county in which the property is located . . .

*Tex. Prop. Code § 12.002(c).*

These provisions essentially require anyone who subdivides and sells

property to replat the property prior to sale and recording. However, subsection-(g)

of the same law allows a district court to negate subsections (b) and (c)'s

requirements through court order. Subsection-(g) simply states that "[t]his section

does not apply to a partition by a court." *Id.* § 12.002(g).

> 2.    **The district court's final judgment orders the property to be sold and is therefore a "partition by a court" under Property Code § 12.002(g).**

The district court's final judgment dictates that, among other things,

"Defendants are ORDERED to convey to Plaintiffs the portion of lot 13 identified

in the Mediated Settlement Agreement ('MSA') . . . ('the Property') . . . ." *C.R.* at

125 ¶ 2. The MSA, which was attached as Exhibit C to the judgment, obligates the

Nickersons to purchase and the Gordons to convey "a portion" of the Gordons'

property.  _C.R._ at 138 ¶ 1.

Though the Texas Property Code does not specifically define the term "partition," Black's Law Dictionary defines it as "1. Something that separates one part of a space from another. 2. The act of dividing; esp., the division of real property . . . ." _Black's Law Dictionary (9th Ed.) (2009)_.  By its clear terms, the MSA compels the Gordons to convey a portion of their property to the Nickersons. **The final judgment, then, is safely characterized as a "partition by a court" because it enforces the terms of the MSA to which the parties agreed. Furthermore, <u>the Gordons _agreed_</u> with this interpretation at the trial court <u>_by making this very same argument._</u>**  See, e.g., _3 R.R._ at 33:9-13 ("MR. R. GORDON: And under Texas Property Code 12.002(g) under a judicial order the civil and criminal liability that would otherwise be subject to Mr. Gordon would no longer be in play if we have a court order requiring the subdivision of this property."); _3 R.R._ at 35:17-25 ("MR. R. GORDON: So that's what – that's why we're seeking the motion to confirm arbitration. If we just subdivide this property without coming in front of Your Honor and without getting a court order and final judgment, he would be subject to the same civil and criminal liability. Under the Property Code 12.02(g) [_sic_], if the Court orders the subdivision of the property, then he does not have that liability. We're – we're kind of arguing over nothing here.").  Therefore, since the district court's final judgment constitutes a court-

ordered partition of the property, any issues regarding the contract potentially violating Texas law are ultimately moot.[5]

### 3. The Gordons' fear of criminal prosecution is unfounded.

The Gordons assert they fear criminal prosecution if the sale of the property is allowed to move forward. But they ignore the fact that under Local Government Code § 212.018, prosecution can only occur "[a]t the request of the governing body of the municipality. . .". *Tex. Loc. Gov't Code § 212.018(a).* The Gordons offered no evidence or proof to the trial court, and they offer no evidence or proof to this Court, that prosecution has been threatened, implied, or even considered by the City of Austin in this case. In short, they offer no credible reason to believe prosecution could ever occur.

### E. The district court did not modify the arbitrator's ruling.

### 1. The plain text of the district court's order confirms the ruling.

As stated *supra*, under the Texas Arbitration Act ("TAA"), arbitration awards are entitled to great deference by the courts, and judicial review of an arbitration award is extremely narrow, even where the arbitrator misapplies the law. *Crossmark*, 124 S.W.3d at 429. In their second point of error, the Gordons complain that the trial court improperly modified the arbitrator's ruling by

---

[5] By extension, this Court's affirmation of the district court would make the Gordons' illegality arguments even more irrelevant.

awarding the Nickersons $8,571.00 for the trees that Mr. Gordon destroyed. But the clear language of the district court's order indicates that it confirmed the arbitrator's ruling outright. _C.R._ at 125 ¶ 1 ("The Court hereby CONFIRMS the Arbitration Awards of June 5, 2015 . . . and August 27, 2015 . . .").

> **2. The additional damages awarded to the Nickersons were not related to arbitration and therefore are not a modification to the arbitrator's award.**

The $8,571.00 was awarded because of Mr. Gordon's flagrant breach of the MSA, not as a modification of the arbitrator's award. _3 R.R._ at 12 ("MR. SNELL: -- I removed those claims. The only claims left are breach of the MSA and I'm asking for $14,000 related to the value of the trees that were cut down."). As Mr. Nickerson testified at the hearing to confirm the arbitration award:

> Q. Okay. Now, are you also seeking costs related to breach of the MSA that occurred after the arbitrator's final ruling?
> A. We are.
> Q. Okay. And what are those costs related to?
> A. After the arbitrator's ruling that we should move forward with this and complete the sale, we've had to have attorney fees to go to a temporary restraining order hearing and an injunction hearing, and then we had damages because Mr. R. Gordon cut down the trees on the property to be conveyed, leaving stumps and brush that needs to be removed and replant trees that need to be replaced.

_3 R.R._ at 21:10-22.

Mr. Nickerson also testified as follows:

> Q. Okay. And have you ever had an opportunity to ask for those

damages in any other proceeding? Did you have an opportunity to present those to -- to Claude Ducloux?

A. No, because they occurred more recently.

Q. Okay. And are you asking the Judge to modify Claude Ducloux's ruling or are you asking for a – the Judge to award you those damages for breach of the MSA?

A. For the breach of the MSA.

*3 R.R.* at 24:10-18.

Of note, the Gordons did not object to any of this testimony, which was properly admitted before the court. Therefore, they waived all arguments regarding the allocation of damages on appeal. See *Tex. R. App. P. 33.1*; *McKenzie*, 997 S.W.2d at 280.

**3.    The district court's award of additional damages is a "cost" or "disbursement" under Civil Practice & Remedies Code § 171.091(b).**

Under the TAA, when a court confirms an arbitration award, it is also entitled to award "disbursements." *Tex. Civ. Prac. & Rem. Code § 171.091(b)(2)*. Neither the Civil Practice & Remedies Code nor Texas case law defines this term, but the Gordons offer no reason why the trial court's award of additional damages cannot constitute a disbursement under the statute. Black's Law Dictionary defines a disbursement as "The act of paying out money, commonly from a fund or in settlement of a debt or account payable." *Black's Law Dictionary (9th Ed.) (2009).* Under basic principles of equity and the prevention of unjust enrichment, the Gordons were indebted to the Nickersons from the moment they permanently

altered the conveyance property.

Similarly, the Gordons offer no reason why the additional damages for the malicious destruction of the trees cannot constitute "costs" under § 171.091(b)(1). Had Mr. Gordon not partially destroyed and altered the property, the Nickersons would not have had to expend the costs associated with amending their petition, seeking a permanent injunction, or confirming the arbitrator's ruling in the district court. Instead, with a legally binding MSA and arbitration ruling already in place, the Nickersons could have dismissed their claims and the parties could have moved forward with the sale (as all parties desired at the time). Under the plain language of § 171.091(b)(1), the district court was free to consider the additional damages for destroying the trees as newly-incurred "costs of the application." _Id._

## F.	The district court did not err in awarding attorney's fees.

### 1.	Fees were available under Civil Practice & Remedies Code § 38.001 for breach of the MSA.

The Gordons assert in their third point of error that the trial court erred in awarding the Nickersons $9,563.48 in "non-segregated" attorney's fees. But such fees were justified both for a breach of the MSA and for the efforts the Nickersons had to undertake to confirm the arbitration award and obtain a permanent

injunction.[6]

In Texas, attorney's fees are generally available for breach of contract claims. *Tex. Civ. Prac. & Rem. Code § 38.001(8)*. According to the Gordons, attorney's fees were not available under the MSA because the agreement states that "Each party shall otherwise bear his her its [*sic*] own attorneys fees and mediation fees." *C.R.* at 138 ¶ 6. However, in the context of a negotiated settlement agreement, this statement applied only to the underlying litigation brought by the Nickersons prior to mediation and the negotiations surrounding the creation of the MSA, not to a breach of the MSA itself. Under Texas law, to waive a statutory right to attorney's fees, the waiver must "specifically preclude [a] statutory claim to an award of attorney's fees under Section 38.001." *Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692 (5th Cir. 1989) (interpreting Texas law); see also *Bank of Am., N.A. v. Hubler*, 211 S.W.3d 859, 865 (Tex. App.—Waco 2006, pet. granted, judgm't vacated w.r.m.) (holding that the claimant did not waive her statutory right to attorney's fees because the contract provision that the bank would not be liable "for attorney's fees incurred," was "too general to apprise [the claimant] of what right she [was] relinquishing, namely her statutory right to attorney's fees under Chapter 38."). No such waiver exists in the MSA.

---

[6] Notably, the Gordons sought their own attorney's fees before the trial court for their own efforts to confirm the arbitration award under the same provisions they now assert are not applicable to the Nickersons' efforts. See *C.R.* at 109 ¶ 17.

This case is identical to *Herring v. Heron Lakes Estates Owners Association,* in which the Fourteenth Court of Appeals affirmed the prevailing party's right to attorney's fees following a breach of a negotiated settlement agreement. No. 14-09-00772-CV, 2011 Tex. App. LEXIS 5 (Tex. App.—Houston [14th Dist.] 2011, pet. dismissed). The underlying suit concerned a property owners' association's claims against individual homeowners in the subdivision for violating various restrictive covenants. *Id.* at 1. Attorney's fees were not available to either party in the underlying claim, but the parties negotiated a settlement agreement on the record before the court. *Id.* at 2-3. Later, the owners' association alleged the homeowners breached the settlement agreement, and the trial court granted summary judgment to the owners' association on the issue of breach and also awarded the owners' association its attorney's fees. *Id.* at 3. The homeowners appealed, arguing that the owners' association waived its right to attorney's fees under an explicit provision of the settlement agreement that stated "there will be no attorneys' fees awarded on either side." *Id.* at 16. The court of appeals affirmed the district court's judgment, finding:

> The contract provision at issue in this case did not specifically preclude a statutory award of attorney's fees for a breach of the settlement agreement itself. Rather, the parties agreed that the parties would bear their own attorney's fees incurred in the negotiation and settlement, not that the [homeowners' association] waived attorney's fees incurred to enforce the settlement agreement. Accordingly, the trial court did not err in awarding attorney's fees accruing from the point when [the homeowners] breached the agreement.

Page 24 of 33

*Id.* at 19-20.

Here, at the very least, the Gordons breached paragraph 8 of the MSA by stringing up barbed wire and "No Trespassing" signs around the water well, thus preventing the Nickersons' "uninterrupted" access to it. See *C.R.* at 138 ¶ 8; *6 R.R.* at 5-10 (Exh. 1). Just as in *Herring,* the MSA in this case contains no explicit language waiving the right to fees in the event the agreement itself is breached.

### 2. Attorney's fees were available for efforts to confirm the arbitration award.

When a party's challenge to an arbitration award is "without merit" and its refusal to abide by the award is "without justification," a trial court can award attorneys' fees to the party seeking to confirm the arbitration award. *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 863-64 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir. 1994). Even in the event fees were not available under Chapter 38 of the Civil Practice & Remedies Code, the Gordons' egregious actions in this case easily meet the "without justification" standard for awarding fees.

### 3. The fees were not "non-segregated."

The Gordons complain that the fees were not segregated between the Nickersons' breach of contract claim, their efforts to seek an injunction, and their motion to confirm the arbitration award. This is not the case. All awarded fees

were incurred only after early September 2015 when the Gordons breached the MSA by excluding the surveyor, destroying trees, and preventing access to the well. *6 R.R.* at 24-38 (Exh. 4-6); *6 R.R.* at 39-44 (Exh. 7-8). After this point, all fees related directly to pursuing a claim that was eligible for fees, namely the Nickerson's breach of contract claim. As counsel for the Nickersons informed the trial court:

> MR. SNELL: We almost agree on everything, but within our second amended petition, which we want to be heard on today and we set that for hearing, we have requested damages related to the breach of the mediated settlement agreement.
> THE COURT: Okay.
> MR. SNELL: So we intend to put on evidence of -- of those damages.
> THE COURT: Okay.
> MR. SNELL: And that's the tree cutting, Your Honor.

*3 R.R.* at 7:11-21.

> MR. SNELL: And that's about ten minutes of testimony from Jim Nickerson, and then I'm asking for my attorney fees, and so -- and I've made no secret what I'm seeking. In fact, we've been arguing about it.
> THE COURT: Okay.
> MR. SNELL: So this -- you know, there – there's no undue prejudice, there's no surprise. Depositions, they've -- Jim Nickerson has testified twice in this case.

*3 R.R.* at 12:14-22.

Over the Gordons' objection, the records supporting the fees were properly admitted through the direct testimony of counsel for the Nickersons at the district court. *3 R.R.* at 54:4-57:18, 58:4-64:16. The Gordons do not assert that receiving

these exhibits was a "clear abuse of discretion" or that it is even reviewable under the "extremely narrow" assessment of the district court's actions that is allowed by this Court. See *Tyra,* 822 S.W. 2d at 631; *Hisaw*, 115 S.W.3d at 18; see also *Tex. R. App. P. 44.1(a)* ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

Furthermore, the Nickersons' fees to pursue the injunction and confirmation the arbitration award were "inextricably intertwined" with their MSA breach claims because all the claims arose out of the same transactions and depended on proof of the same facts. See, e.g., *Air Routing Int'l Corp. v. Britannia Airways, Ltd.*, 150 S.W.3d 682 (Tex. App.—Houston [14th Dist.] 2004, no pet.). As such, it was not error for the district court to award the Nickersons all of their requested fees.

**G.     All the remaining points of error asserted by the Gordons are without merit.**

In their final points of error, the Gordons assert that the trial court's temporary injunction order did not comply with Texas Rule of Civil Procedure 683 and the order was too broad, thereby preventing them from exercising their legal rights. *Appellants' Brief* at 33-40. Both of these points are without merit.

First, the Gordons waived any errors concerning the form or substance of the temporary injunction because they were willing to agree to all of its terms before the trial court. *2 R.R.* at 7:21-9:20. As shown repeatedly throughout this brief, it is nonsensical for the Gordons to now complain to this Court that their rights were impeded by the trial court when they essentially agreed to all of the trial court's rulings concerning what actions they were prohibited from taking regarding the conveyance property.[7]

Second, the temporary injunction was clearly needed to preserve the status quo and prevent irreparable harm to the Nickersons, as Mr. Gordon had **already disobeyed** the court's prior order to remove the barbed wire fence he had erected next to the Nickerson children's trampoline. *2 R.R.* at 60:8-18. The court made this clear when it granted the application. *2 R.R.* at 58:4-66:23. As the court astutely recognized:

> THE COURT: -- between now and then. As long as he doesn't violate it, there's no -- all we're doing is keeping the status quo. We just don't want any more trees coming down, we don't want the land changed, and because there's -- you know, as you mentioned, there's -- there are some -- I don't want him coming in and saying, "Well, the contract" -- you know, "this mediated settlement agreement didn't say that I could burn down the land." I mean, that's not okay. We want the land to remain exactly as it is and we certainly don't want any

---

[7] See *C.R.* at 125 (noting in the final judgment that "*[t]he parties have AGREED* and IT IS THEREFORE ORDERED, that Plaintiffs' request for permanent injunctive relief should be an is hereby in all things GRANTED.") (emphasis added). The Gordons never objected to the language in the order reflecting the trial court's understanding that the Gordons did not dispute the terms of the permanent injunction.

tampering of the wells and we don't want any children harmed. All right? . . .

*2 R.R.* at 62:19-63:6.

Third, the temporary injunction order clearly complies with Rule 683 on its face. *C.R.* at 101-03. The Gordons cannot reasonably dispute that the order sets for the reasons for its issuance, is specific in its terms, and describes in reasonable detail the acts the Gordons were restrained from taking. *Tex. R. Civ. P. 683*.

Fourth, as indicated elsewhere throughout this brief, all of the actions the injunction prevents the Gordons from taking with respect to the conveyance property are immediately moot upon transfer of the property to the Nickersons.

Fifth, the Gordons are simply incorrect that the terms of the permanent injunction restrain them from exercising their legal rights. To the contrary, the Gordons never possessed any rights to dispossess or alter the Nickersons' access to the water well to begin with under the easement that had already been in place for nearly two decades. *C.R.* at 126 ¶¶ 1-4; see also *C.R.* at 13-18. And any other "rights" the Gordons brazenly assert that they possess regarding the land generally were forfeited when they breached the MSA and permanently altered the nature of the conveyance property, thereby depriving the Nickersons of the benefit of the bargain they received when they agreed to purchase the property. *Id.* ¶¶ 5-7.

### III. CONCLUSION AND PRAYER FOR RELIEF

The Gordons filed a frivolous appeal by requesting this Court to reach conclusions that are exactly opposite of the conclusions they sought the trial court to reach. To reverse the entire transaction as the Gordons request would not only irreparably harm the Nickersons by requiring them to continue to litigate issues that have already been mediated and arbitrated twice, it would jeopardize their homestead's access to potable water. Further, aside from the sound legal arguments set out *supra*, affirming the district court is the most equitable result under the circumstances. See, e.g., *Lincoln Nat'l Life Ins. Co. v. Rittman*, 790 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1990, no writ) ("[Basic principles of equity], after all, remains the test. Perhaps this approach lacks analytical rigor, but it was precisely a scrupulous adherence to rigor that resulted in the growth of the courts of equity in the first place. While we do not deprecate the logic of appellant's legal position, there sometimes arise cases where law goes only so far and the chancellor must step in.").

The Nickersons respectfully request this Court AFFIRM the trial court's final judgment in all aspects. In the alternative, to the extent the Court deems it necessary, the Nickersons request this Court include in its judgment an affirmation that the contract in question is valid under Texas law and the property be conveyed as agreed by the parties in the MSA. The Nickersons further request their costs of

court pursuant to Texas Rule of Appellate Procedure 43.4. The Nickersons also request their attorney's fees on appeal in the amount of $15,000 under Tex. Civ. Prac. & Rem. Code § 38.001(8) for the Gordons' continued concerning their obvious breach of the MSA. Additionally, the Nickersons request this Court to ORDER the Gordons to sign and transmit the deed finalizing the sale of the property within five (5) days of the Court's order. Finally, the Nickersons request all other relief in law and in equity to which they are reasonably entitled.

Respectfully submitted,

The Snell Law Firm, P.L.L.C.

BY: ___/s/ Jason W. Snell_____
JASON W. SNELL
Bar No. 24013540
JOHN ROBERT SKRABANEK
Bar No. 24070631
The Snell Law Firm, PLLC
Chase Tower
221 W. 6th Street, Suite 900
Austin, Texas 78701
(512) 477-5291 – Telephone
(512) 477-5294 – Fax
firm@snellfirm.com – Email
ATTORNEYS FOR APPELLEES

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4, I certify that Appellees' Brief in Response contains 7,661 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes, which are in 12-point typeface. In making this Certificate of Compliance, I am relying on the word count provided by the software used to prepare the document.

/s/ Jason W. Snell
Jason W. Snell

## CERTIFICATE OF SERVICE

I certify that on the 22nd day and 30th day of August 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was thereby caused to be served on Appellants.

Jeremie Gordon and Amber Arnold-Gordon
14284 FM 2769
Leander, Texas 78641
Telephone: (512) 838-1849
Facsimile: (512) 410-0263
Jeremie.gordon@gmail.com
Amber.renee.gordon@gmail.com
*Pro Se Appellants*

/s/ Jason W. Snell
Jason W. Snell

## APPENDIX

ITEM        Document

A           Texas Property Code § 12.002

B           Texas Civil Practice & Remedies Code § 38.001

# ITEM-A

Sec. 12.002. SUBDIVISION PLAT; PENALTY. (a) The county clerk or a deputy of the clerk with whom a plat or replat of a subdivision of real property is filed for recording shall determine whether the plat or replat is required by law to be approved by a county or municipal authority or both. The clerk or deputy may not record a plat or replat unless it is approved as provided by law by the appropriate authority and unless the plat or replat has attached to it the documents required by Subsection (e) or by Section 212.0105 or 232.023, Local Government Code, if applicable. If a plat or replat does not indicate whether land covered by the plat or replat is in the extraterritorial jurisdiction of the municipality, the county clerk may require the person filing the plat or replat for recording to file with the clerk an affidavit stating that information.

(b) A person may not file for record or have recorded in the county clerk's office a plat or replat of a subdivision of real property unless it is approved as provided by law by the appropriate authority and unless the plat or replat has attached to it the documents required by Section 212.0105 or 232.023, Local Government Code, if applicable.

(c) Except as provided by Subsection (d), a person who subdivides real property may not use the subdivision's description in a deed of conveyance, a contract for a deed, or a contract of sale or other executory contract to convey that is delivered to a purchaser unless the plat or replat of the subdivision is approved

and is filed for record with the county clerk of the county in which the property is located and unless the plat or replat has attached to it the documents required by Subsection (e) or by Section 212.0105 or 232.023, Local Government Code, if applicable.

(d)  Except in the case of a subdivision located in a county to which Subchapter B, Chapter 232, Local Government Code, applies, Subsection (c) does not apply to using a subdivision's description in a contract to convey real property before the plat or replat of the subdivision is approved and is filed for record with the county clerk if:

(1)  the conveyance is expressly contingent on approval and recording of the final plat;  and

(2)  the purchaser is not given use or occupancy of the real property conveyed before the recording of the final plat.

(e)  A person may not file for record or have recorded in the county clerk's office a plat, replat, or amended plat or replat of a subdivision of real property unless the plat, replat, or amended plat or replat has attached to it an original tax certificate from each taxing unit with jurisdiction of the real property indicating that no delinquent ad valorem taxes are owed on the real property.  If the plat, replat, or amended plat or replat is filed after September 1 of a year, the plat, replat, or amended plat or replat must also have attached to it a tax receipt issued

by the collector for each taxing unit with jurisdiction of the property indicating that the taxes imposed by the taxing unit for the current year have been paid or, if the taxes for the current year have not been calculated, a statement from the collector for the taxing unit indicating that the taxes to be imposed by that taxing unit for the current year have not been calculated. If the tax certificate for a taxing unit does not cover the preceding year, the plat, replat, or amended plat or replat must also have attached to it a tax receipt issued by the collector for the taxing unit indicating that the taxes imposed by the taxing unit for the preceding year have been paid. This subsection does not apply if:

(1) more than one person acquired the real property from a decedent under a will or by inheritance and those persons owning an undivided interest in the property obtained approval to subdivide the property to provide each person with a divided interest and a separate title to the property; or

(2) a taxing unit acquired the real property for public use through eminent domain proceedings or voluntary sale.

(f) A person commits an offense if the person violates Subsection (b), (c), or (e). An offense under this subsection is a misdemeanor punishable by a fine of not less than $10 or more than $1,000, by confinement in the county jail for a term not to exceed 90 days, or by both the fine and confinement. Each violation

constitutes a separate offense and also constitutes prima facie evidence of an attempt to defraud.

(g) This section does not apply to a partition by a court.



# ITEM-B

Sec. 38.001. RECOVERY OF ATTORNEY'S FEES. A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

      (1) rendered services;

      (2) performed labor;

      (3) furnished material;

      (4) freight or express overcharges;

      (5) lost or damaged freight or express;

      (6) killed or injured stock;

      (7) a sworn account; or

      (8) an oral or written contract.